The C & C ORGANIZATION, Plaintiff,

v.

AGDS, INC., a California corporation; and Surinder S. Dang and Ajit S. Gill, individuals, Defendants.

No. CV 87–4256–RMT (Kx).

United States District Court,
C.D. California,
Civil Division.

Oct. 6, 1987.

Lyon & Lyon, A Partnership Including Robert C. Weiss, A Professional Corp., Jeffrey M. Olson, David B. Murphy, Los Angeles, Cal., for plaintiff.

Law Offices of Edward E. Roberts, Santa Ana, Cal., for defendants.

TAKASUGI, District Judge.

Plaintiff, The C & C Organization, moves this court for an order granting preliminary injunction to enjoin and restrain defendants, their agents, servants, employees, attorneys and all others in active concert or participation with them, during the pendency of this action, from using plaintiff's trade names and service marks CASK 'N CLEAVER and CASK, and confusingly similar variations thereof, including but not limited to the term CASQUE.

Issuance of a preliminary injunction is required upon a clear showing by the party seeking such relief of either (1) a combination of probable success on the merits and possible irreparable injury, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping sharply in its favor. *California Cooler v. Loretto Winery, Ltd.*, 774 F.2d 1451, 1455 (9th Cir. 1985); *Apple Computer, Inc. v. Formula Intern. Inc.*, 725 F.2d 521, 523 (9th Cir. 1984); *William Inglis & Sons Baking Co. v. ITT Continental Baking Co.*, 526 F.2d 86, 88 (9th Cir.1975).

"The alternative tests set forth by *Inglis* [and its progeny] are not really two entirely separate tests but merely extremes of a single continuum." *Aleknagik Natives Ltd. v. Andrus*, 648 F.2d 496, 502 (9th Cir.1980), citing *Miss Universe, Inc. v. Flesher*, 605 F.2d 1130, 1134 (9th Cir.1979); *Benda v. Grand Lodge of International Association*, 584 F.2d 308, 315 (9th Cir. 1978).

The critical element in determining the test to be applied is the relative hardship of the parties. *Id.* If the balance of harm tips decidedly towards the plaintiff, the plaintiff need not show as robust a likelihood of success on the merits, although the plaintiff must at a minimum have a fair chance of success on the merits. *Id.* Thus, the necessary showing of likelihood of success on the merits decreases as the balance of hardships increases in favor of the movant. *Id.* *Id.*

*Likelihood of Success on Merits*

In order to qualify for protection under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1982), plaintiff must establish both that the word(s) used are valid marks entitled to protection—through a showing of distinctiveness (secondary meaning)—and that defendants' conduct amounted to an infringement of plaintiff's exclusive trademark rights—by showing a likelihood of confusion among consumers. *See Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1014–15 (9th Cir. 1985), *cert. denied*, 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986); *Alpha Industries v. Alpha Steel, etc.*, 616 F.2d 440, 443 (9th Cir.1980).

Plaintiff asserts that the names CASK and CASK 'N CLEAVER have acquired secondary meaning. Secondary meaning is achieved when an association occurs (among purchasers) between a name and a source. *Transgo, supra*, 768 F.2d at 1015. Such a determination is a question of fact, and among the relevant factors to be considered are: "[ (1) ] the degree and manner of advertising under the claimed trademark, [ (2) ] the length and manner of [its] use … and, [ (3) ] whether [its] use … has been exclusive," *Id.* As support, plaintiff refers to *California Cooler v. Loretto, supra*, 774 F.2d at 1453, 1456, in which secondary meaning was found where plaintiff had exclusively used a mark for about two and one-half years, had reached the point of grossing more than $38,000,000 during

one six-month period and spending $9,000,-000 on advertising during a nine-and-one-half-month period.

It appears not to be refuted that plaintiff in the instant case has continuously, extensively and exclusively used the CASK and CASK 'N CLEAVER trade names and service marks for over twenty years in the Los Angeles area, the relevant market. Further, plaintiff asserts that annual sales exceed $25,000,000 ($180,000,000 since 1980) and that advertising costs in 1986 were about $650,000. Although the amount of money involved is not as significant as that in *California Cooler, supra,* it is indeed substantial in view of the limited geographic region in which plaintiff has operated. Further, plaintiff has used the marks for a much lengthier period of time than was the case in *California Cooler.*

It is defendants' assertion that the only mark for which plaintiff may have acquired secondary meaning is CASK 'N CLEAVER, and not CASK, since plaintiff has taken various positions with respect to the words "Cask," "The Cask," "The Original Cask," etc. Defendants therefore conclude, *inter alia,* that such inconsistent uses of "Cask" are inconsistent with intent to acquire goodwill in the word, words, or phrases having to do with "Cask." However, a careful examination of plaintiff's use of the word "Cask" in newspaper and radio advertisements, in reference to various menu items, and in other uses seems to reveal a rather consistent attempt to associate the word "Cask"—in its various contexts—with the restaurant's goods and services.

Additionally, "[s]econdary meaning can also be established by evidence of likelihood of confusion. [Citation]. Secondary meaning and likelihood of buyer confusion are separate but related determinations, the relationship arising from the same evidentiary findings." *Transgo, supra,* 768 F.2d at 1015. Plaintiff succeeds in making a strong showing of likelihood of confusion (including evidence of actual confusion), thereby strengthening the claim of secondary meaning.

On the whole, it appears that the names at issue have acquired secondary meaning—at least with respect to the relevant Los Angeles area market.

 The factors set forth for determining whether there exists a likelihood of confusion between the marks are: (1) similarity of the marks; (2) evidence of actual confusion; (3) relationship between plaintiff's and defendant's goods and channels of trade; (4) strength of the mark; and (5) defendant's intent in adopting the mark. *Park 'N Fly, Inc. v. Dollar Park And Fly, Inc.,* 782 F.2d 1508, 1509 (9th Cir.1986). On a motion for preliminary injunction, "the trial court is not required to consider all of [these] factors." *Apple Computer, supra,* 725 F.2d at 526. Nor must the court find in plaintiff's favor on each of the factors it considers in order to support a finding of likelihood of confusion. Rather, the court is to balance the various considerations. *Park 'N Fly, supra,* 782 F.2d at 1509.

 (1) "Similarity of the marks is tested on three levels; sight, sound, and meaning." *AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341, 351 (9th Cir.1979). "Casque" and "Cask" have the identical sound, thus it is hardly reasonable to suggest anything but that THE CASQUE and CASK are quite similar in sound (and defendants do not suggest otherwise). This similarity in sound seems significant in at least two ways. Plaintiff says it generally uses the term CASK as part of its telephone greeting, rather than the longer name CASK 'N CLEAVER, and is therefore concerned that confusion may occur each time the defendants answer the telephone. Secondly, "[s]ound is also important because reputation is often conveyed word-of-mouth." *AMF, Inc., supra,* 599 F.2d at 351.

Regarding sight, defendants merely assert that "THE CASQUE is not similar to ... CASK...." Although any similarity in sight is less obvious than as with sound, some precedents would suggest that finding such a similarity between these marks may not be stretching one's imagination very far. *See, e.g., AMF, Inc., supra,* 599 F.2d at 351 (The words Sleekcraft and

Slickcraft are found to be similar to the eye).

With respect to meaning of the words, any similarity seems least evident. Plaintiff admits that the generally recognized meanings of the words are different, with the only such connection being that "casque" is an obsolete definition of the word "cask" according to Webster's Unabridged Dictionary. Even here, plaintiff may be correct in suggesting that the public is reasonably likely to understand the word CASQUE to be a foreign or stylistic variation of the word CASK. *See, e.g., Apple Computer, supra,* 725 F.2d at 526—a slight change in plaintiff's mark may suggest to the public that defendant's goods were "manufactured by licensees or subsidiaries" of plaintiff, especially when used on related goods ("Pineapple" was found to be confusingly similar to "Apple" for computer programs). As plaintiff further points out, such an interpretation by the public is reinforced by the strong similarity in the restaurants' architectural styles, *infra.*

Even relying solely upon sound, similarity of the marks THE CASQUE and CASK seems quite evident. However, due to a strong showing that the parties' goods are closely related (discussed *infra*), "a diminished standard of similarity must be applied when comparing the two marks." *See AMF, Inc., supra,* 599 F.2d at 350.

For related goods, the danger presented is that the public will mistakenly assume there is an association between the producers of the related goods, though no such association exists. [Citation]. The more likely the public is to make such an association, the less similarity in the marks is requisite to a finding of likelihood of confusion. [Citation]. Thus, less similarity between the marks will suffice when the goods are complementary, [citations], the products are sold to the same class of purchasers, [citation], or the goods are similar in use and function.

*Id.*

(2) Although evidence of actual confusion is difficult to produce, *see Golden Door,* 646 F.2d 347, 351 (9th Cir.1980) plaintiff has produced strong evidence that consumers at various times thought they were eating at a restaurant associated with the CASK 'N CLEAVER chain. Plaintiff sells gift certificates which are redeemable at all CASK 'N CLEAVER restaurants, and evidently people have been presenting them for payment at defendants' restaurant. Perhaps such incidents are a part of what defendants have referred to as "a certain amount of confusion" occuring out of "some necessity" since some usage of plaintiff's mark was bound to happen in the transfer of ownership of the establishment. An example cited is the telephone book ads placed by plaintiff which could not be recalled. However, plaintiff has further asserted that defendants have contributed to the confusion by accepting the coupons and forwarding them to plaintiff for reimbursement.

Defendants make no attempt whatsoever to rebut plaintiff's evidentiary claim supporting a finding of actual confusion on the part of the public.

(3) The relationship between plaintiff's and defendants' goods and channels of trade is a close one indeed. Plaintiff asserts, and defendants do not contest, that both parties are managing and operating restaurants (in the Los Angeles area) primarily emphasizing steak, chicken and seafood and featuring a salad bar. Defendants claim they have "different menus" but fail to go beyond that conclusory statement by explaining how large or small any difference is. Plaintiff further explains that prices charged are comparable and that defendants' restaurant is offering its services in an atmosphere, including both style and decor, that is virtually identical to that found in plaintiff's restaurants.

Defendants state that their marketing channels are different from plaintiff's in that it uses "different advertising in an attempt to make clear to the public that there is no connection with plaintiff." No further explanation is provided. However, plaintiff states that defendants did not advertise that there is no association with plaintiff, but rather ran advertisements

which state: "The Casque, formerly the Cask 'N Cleaver." Plaintiff explains that this statement is false, and merely an attempt to associate defendants' restaurant with plaintiff's. THE CASQUE restaurant was never a CASK 'N CLEAVER restaurant—defendants are merely operating a restaurant at a location where plaintiff once operated one—says plaintiff.

Plaintiff has shown a close and extremely strong relationship between the parties' goods and channels of trade. *See, AMF, Inc., supra,* 599 F.2d at 350 (two noncompeting lines of recreational boats found to be closely related); *Cf. Stork Restaurant, Inc. v. Sahati,* 166 F.2d 348, 356 (9th Cir. 1948) (Restaurants with same name in different geographical and price markets).

(4) As regards strength of plaintiff's mark, defendants maintain that lack of secondary meaning has precluded any such showing. However, as discussed *supra,* secondary meaning has been acquired. "Once secondary meaning is established, though, the protection afforded should be commensurate with the degree of consumer association proven." *AMF, Inc., supra,* 599 F.2d at 348 n. 12. Even if plaintiff's mark is deemed weak, and is thus entitled to a restricted range of protection, since the marks are quite similar and the goods so closely related, infringement should be found. *Id.* at 350.

(5) Defendants' intent in adopting plaintiff's mark "is less probative of the likelihood of confusion, yet may be given considerable weight in fashioning a remedy." *Id.* Nonetheless, there is some evidence that defendants attempted to capitalize on the similarity of the marks and, thus, the goodwill of plaintiff's mark.

Defendants claim to have first conducted a trademark search which indicated that plaintiff had no registered marks, and that defendants were not provided any information that plaintiff claimed any rights to CASK prior to their selection of THE CASQUE. However, plaintiff states that defendant Gill spoke with Kenneth J. Miller, a former employee of plaintiff, prior to defendants' selection of a new name; that Mr. Gill expressed defendants' difficulty in

selecting a new name and mark; that Mr. Gill asked whether plaintiff had any objection if defendants used the name and mark CASK; and that Mr. Miller informed Mr. Gill that plaintiff would strongly object to defendants' use of CASK, as well as the use of CASQUE.

Plaintiff further points to defendants' continued use of the CASK 'N CLEAVER name and mark. Plaintiff states that defendants' cooks wear shirts which state "CASK 'N CLEAVER broiler crew." Additionally, defendants' acceptance of CASK 'N CLEAVER gift certificates could only have helped to perpetuate any already existing confusion the public may have had.

*Possibility of Irreparable Harm*

There appears little doubt that there exists a possibility of irreparable harm to plaintiff if defendants continue to use their current mark. Defendants claim that by agreement the restaurant was to be operated under the name CASK 'N CLEAVER without control by plaintiff, and that by now operating under a different name there is less likelihood of harm. However, the contract between the parties provides that "[Defendant] will be permitted by [plaintiff] to operate under the CASK 'N CLEAVER trade name for up to 180 days from the close of escrow, under the condition that [plaintiff] remain and have *complete control of all restaurant operations.*" (Emphasis added.)

Defendants also assert that absent a likelihood of confusion there can be no harm. However, it is rather evident that there is a quite strong showing of such likelihood. Plaintiff contends that this showing creates "a strong presumption of irreparable injury since [defendants'] use of [its mark] threaten[s] to dilute both the goodwill built up by the plaintiff and its sales." *See, e.g., California Cooler, supra,* 774 F.2d at 1455; *Miss Universe, supra,* 605 F.2d at 1134.

The damages caused by trademark infringement are "by their very nature irreparable and not susceptible of adequate measurement for remedy at law." *Processed Plastic Co. v. Warner Communications, Inc.,* 675 F.2d 852, 858 (7th Cir.1982).

*See also North American Aircoach Systems v. North American Aviation, Inc.,* 231 F.2d 205 (9th Cir.1955), *cert. denied* 351 U.S. 920, 76 S.Ct. 709, 100 L.Ed. 1452 (1956).

█ It seems reasonable to assume that as a result of defendants' use of a confusingly similar name and mark, plaintiff may have already lost sales. Redemption of CASK 'N CLEAVER gift certificates at defendants' restaurant suggests that people intending to eat at a CASK 'N CLEAVER restaurant have instead eaten at THE CASQUE. Furthermore, plaintiff may be damaged through a loss of goodwill since any customers dissatisfied with defendants' restaurant may think twice before eating at CASK 'N CLEAVER. Such losses are impossible to calculate for purposes of any remedy at law.

*Affirmative Defenses of Laches and Estoppel*

"The doctrine [of laches] bars an action where a party's unexcused or unreasonable delay has prejudiced his adversary." *Boone v. Mechanical Specialties,* 609 F.2d 956, 959 (9th Cir.1979). " 'The bare fact of delay creates a rebuttable presumption of prejudice.' " *Id.* quoting *International T. & T. Corp. v. General T. & E. Corp.,* 518 F.2d 913, 926 (9th Cir.1975). *See also, Friend v. H.A. Friend & Co.,* 416 F.2d 526, 533 (9th Cir.1969), *cert. denied,* 397 U.S. 914, 90 S.Ct. 916, 25 L.Ed.2d 94 (1970).

█ As an affirmative defense, defendants have the burden of establishing estoppel by laches. *See, e.g., Safeway Stores, Inc. v. Dunnell,* 172 F.2d 649, 656 (9th Cir.1949). However, defendants merely make the conclusory statement that because of the defenses of laches and estoppel, plaintiff is precluded from recovery. Defendants have in no way attempted to meet their burden of showing unreasonableness in the delay, nor that they were in any way prejudiced.

Based on the foregoing, this court finds likelihood of success on the merits and possibility of irreparable harm and that, therefore, plaintiff is entitled to a preliminary injunction.

This matter having come before the court on the motion by plaintiff for preliminary injunction, and this court having considered the pleadings and other documents filed herein and having filed its memorandum concurrently herewith,

IT IS ORDERED that defendants, their agents, servants, employees, attorney and all others in active concert or participation with them, during the pendency of this action, are enjoined and restrained from using plaintiff's trade names and service marks, CASK 'N CLEAVER and CASK, and any confusingly similar variation thereof, including but not limited to the term CASQUE, provided that plaintiff posts a bond in the sum of $10,000.00.