WATTS HEALTH SYSTEMS, INC., a California non-profit corporation, Watts Health Foundation, Inc. d/b/a United Health Plan, a California non-profit corporation, Plaintiffs,

v.

UNITED HEALTHCARE CORPORATION, a Minnesota corporation, and United Healthcare of California, Inc., a California corporation, Defendants.

No. CV 96–5177 DT (CTx).

United States District Court,
C.D. California.

Aug. 12, 1996.

Todd T. Alberstone, Katten Muchin & Zavis, Los Angeles, CA, Floyd A. Mandell, Elizabeth S. Berghoff, Kristin J. Achterhof, Katten Muchin & Zavis, Chicago, IL, Laurence M. Berman, Lise D. Hamilton, Jeffrey N. Mausner, Berman Blanchard Mausner & Resser, Los Angeles, CA, for plaintiffs.

Robert E. Freitas, Christopher Steven Ruhland, Bradley Scott Miller, Orrick Herrington & Sutcliffe, Los Angeles, CA, for defendants.

TEVRIZIAN, District Judge.

*Background*

1. *Factual Summary.*

This action concerns the alleged infringement of plaintiffs Watts Health Systems, Inc. and Watts Health Foundation, Inc.'s (collectively "Watts") service mark "United Health Plan"[1] by defendants United Healthcare Corporation and United Healthcare of California, Inc. (collectively "United").

Watts consists of two non-profit organizations. *See* Declaration of Clyde W. Oden, Jr., M.D., ¶ 3. Watts Health Foundation, Inc. ("Watts Foundation") was founded in 1967 to provide medical care and health management for minority citizens in the State of California. Oden Decl., ¶ 4. Watts runs in excess of 44 community health programs. *Id.* Watts runs a health maintenance organization ("HMO") which is one of the largest in the State of California with over 80,000 enrollees, annual revenues of over $200 million and more than 900 employees. *Id.* at ¶ 5.

On March 31, 1983, the Watts Foundation commenced using the service mark "United Health Plan" for the HMO. *See* Certificate of Registration of Service Mark, attached as Exhibit "E" to the Oden Decl.; Oden Decl. at ¶ 6. The "United Health Plan" service mark was initially registered with the Secretary of State for the State of California on November 20, 1985, registration No. 25,036. *Id.;* Oden Decl. at ¶ 8. The "United Health Plan" service mark registration has been renewed and presently extends to November 11, 2005. *See* Notice of Renewal of Trademark/Service Mark, attached as Exhibit "E" to the Oden Decl. From March 1987 through June 1996, Watts has expended over $11 million on advertising and promotion of the "United Health Plan" mark. *See* Oden Decl. at ¶ 9.

In late 1995, United Healthcare Corporation allegedly acquired an HMO originally called Metra Healthcare and its California subsidiary is called MetraHealth Care Plan of California, Inc. *See* Complaint, ¶ 9. Recently, United changed the Metra Healthcare name to "United Healthcare Corporation".[2] *Id.* at ¶ 12.

---

**1.** Watts' mark appears with a logo as follows:

**UNITED HEALTH PLAN**

**2.** In its memorandum of points and authorities in opposition to the application, United alleges that it obtained a federal trademark registration number for the mark "United Healthcare" and that the California Department of Corporations granted approval of the name change in June 1996, but no admissible declarations or documentary evidence has been presented to this Court in this regard. Further, this Court has no idea what representations were made by United in its al-

Sometime in May 1996, Bud Volberding ("Volberding"), President and Chief Executive Officer of United, telephoned Dr. Oden and informed him of United's plans for the name change. *See* Declaration of Bud Volberding, ¶ 2. Dr. Oden did not object to this plan during that conversation. *See* Oden Depo., p. 195. On June 21, 1996 at a meeting of the Board of Directors of the California Association of Health Maintenance Organizations, Dr. Oden told Mr. Volberding that Watts had a problem with the new mark "United Healthcare" [3] and that Watts' attorneys would contact him. *See* Oden Depo., pp. 197–198; Volberding Decl., ¶ 3.

### 2. *Procedural History.*

On July 25, 1996, Watts filed its Complaint For: 1. False Designation of Origin 2. Service Mark Infringement 3. Common Law Unfair Competition 4. Statutory Unfair Competition and False Advertising 5. Statutory Trade Name Infringement 6. Dilution.

On July 30, 1996, this Court granted Watts' Ex Parte Application For: (1) Temporary Restraining Order; And Order To Show Cause Re Preliminary Injunction. The temporary restraining order in part restrains United from using, selling, advertising, promoting or infringing the service mark "United Healthcare" in Watts' established market area; representing or implying that any of United's services are in anyway connected with or approved by Watts, destroying, disposing of or altering records relating to United's "United Healthcare" mark and services provided thereunder, and engaging in any unfair trade practices or competition. This Court also set the hearing on the Order To Show Cause Re Preliminary Injunction to August 12, 1996 and it is presently before this Court.

### Discussion

### 1. *Standard.*

To prevail on a motion for preliminary injunction, the plaintiff is required to show that it will suffer irreparable injury and that it is likely to prevail on the merits, or serious questions regarding the merits exist and the balance of hardships tips sharply in the plaintiff's favor. *Chalk v. U.S. District Court,* 840 F.2d 701, 704 (9th Cir.1988); *California Cooler, Inc. v. Loretto Winery, Ltd.,* 774 F.2d 1451, 1455 (9th Cir.1985). A showing of a reasonable likelihood of success on the merits raises a presumption of irreparable harm. *Apple Computer, Inc. v. Formula International Inc.,* 725 F.2d 521, 525 (9th Cir.1984), citing *Apple Computer, Inc. v. Franklin Computer Corp.,* 714 F.2d 1240, 1254 (3d Cir.1983), *cert. dismissed,* 464 U.S. 1033, 104 S.Ct. 690, 79 L.Ed.2d 158 (1984). A showing of harm varies inversely with the required showing of meritoriousness. *Rodeo Collection, Ltd. v. West Seventh,* 812 F.2d 1215, 1217 (9th Cir.1987).

Under both federal and California law for trademark infringement:

> the "crucial issue" is whether the defendant's use of the plaintiff's service mark or trade name creates a "likelihood of confusion" for the public.

*Century 21 Real Estate Corp. v. Sandlin,* 846 F.2d 1175, 1178 (9th Cir.1988). Evidence of actual confusion or intent is not required for a finding of likelihood of confusion. *Id.*

■ A party may suffer irreparable harm to its good will if the infringement causes consumers to misidentify the products with the plaintiff's products. *C & C Organization v. AGDS, Inc.,* 676 F.Supp. 204, 208 (C.D.Cal.1987); *Louis Rich, Inc. v. Horace W. Longacre, Inc.,* 423 F.Supp. 1327, 1334 (E.D.Pa.1976).

### 2. *A Preliminary Injunction Is Warranted.*

■ Watts seeks a preliminary injunction enjoining United from using the "United

leged trademark application regarding the type of business and/or members it intended to target under this alleged mark and what if any disclosures were made in the application about other HMOs using similar names.

**3.** United's mark appears as follows:

UNITEDhealthcare⁻.

Healthcare" mark because it is confusingly similar to Watts' "United Health Plan" mark, United is competing in the same field as Watts, United's newly acquired HMO in California has a bad reputation which will tarnish Watts' good reputation because the public will confuse them as related companies, Watts will suffer irreparable injury, and Watts has a strong probability of success on the merits. This Court agrees.

As noted in Section 1 *supra*, a plaintiff is likely to prevail on the merits where there is a likelihood that confusion will result between the two marks at issue. To determine whether there is a likelihood of confusion, this Court must consider the following factors:

1) the strength or weakness of the marks;
2) similarity in appearance, sound, and meaning;
3) the class of goods in question;
4) the marketing channels;
5) evidence of actual confusion; and
6) evidence of the intention of defendant in selecting and using the alleged infringing name.

*Century 21*, 846 F.2d at 1179. An additional factor is the likelihood of expansion of the product lines or services. *General Conference Corp. of Seventh–Day Adventists v. Seventh–Day Adventist Congregational Church*, 887 F.2d 228, 231 (9th Cir.1989). This Court need not find in Watts' favor on each of these factors, this Court need only balance these various factors in determining a likelihood of confusion. *C & C Organization*, 676 F.Supp. at 206.

## A. *Strength of the Mark.*

The *Century* 21 court held that:

"A strong mark is one which is used only in a 'fictitious, arbitrary and fanciful manner', whereas a 'weak' mark is a mark that is a meaningful word in common usage, or is merely a suggestive or descriptive trademark."

846 F.2d at 1179; *Nutri/System, Inc. v. Con-Stan Industries, Inc.*, 809 F.2d 601, 605 (9th Cir.1987). The *Nutri/System* court held:

Among "weak" marks, courts bestow less protection on a descriptive mark than a suggestive one. *Surgicenters*, 601 F.2d at 1014–1015. The former specifically describes a characteristic or ingredient of an article or service (i.e., *"Park 'N Fly"*), while the latter suggests, rather than describes, an ingredient, quality or characteristic (i.e., *Sleekcraft*).

809 F.2d at 605.

On November 11, 1985, Watts registered its "United Health Plan" service mark with the Secretary of State for the State of California and this registration has been renewed and is currently valid. In addition, Watts filed and maintains a Fictitious Business Name Statement with the State of California for the "United Health Plan" mark. *See* Exhibit "E" to the Oden Decl. Prior to registration, Watts used the mark "United Health Plan" in referring to its HMO since 1980. Although the case law is clear that registration alone does deem a mark "strong," in a situation like this where a party has used the mark for a particular type of service and is well known in the community for this type of service, the mark can be considered a strong mark. Further, Watts has also spent millions of dollars on advertising its HMO under the "United Health Plan" mark for sixteen years. *See* Oden Decl. at ¶ 9. Until United's recent implementation of the name change for its California HMO, Watts was the only HMO in the State of California using "United Health" in its name.[4] *Id.* at ¶ 12; Volberding Depo., pp. 179–182. Watts has also provided evidence that the media and the public have both referred to its plan as "United Health" or "United." *See* Oden Decl., ¶ 4. Volberding even testified that he felt that the mark "United Health Plan" was distinctive. *Id.*[5]

---

4. United presents evidence of five other corporations in the State of California which use the words "United Health" in their names, but there is no indication that any of these companies is an HMO or even an insurer of any kind. *See* Exhibit "E" to the Westermeyer Decl.

5. Although numerous businesses in the City of Los Angeles alone use the word "United" as the first term in the name of their businesses, this does not negate the strength of the "United Health Plan" mark in the HMO arena as none of the other names listed appears to be for an HMO.

This Court finds that the "United Health Plan" mark is a strong mark.[6]

### B. *Similarity of Sound, Appearance and Meaning.*

This Court finds that the marks "United Health Plan" and "United Healthcare" sound similar. This Court also finds that the two marks are visually similar. The evidence demonstrates that the "United Health Plan" mark is sometimes accompanied by a logo of a family holding hands in advertisements and promotional documents, but this is not always the case. *See* Oden Depo., p. 139; Supplemental Declaration of Dr. Oden, ¶ 2; Volberding Depo., p. 104. Thus, the family logo is not always present to provide a distinguishing characteristic from United's "United Healthcare" logo. Although the words are capitalized in one mark and not all capitalized in another mark, and they use different colors, this Court finds that the public is not necessarily going to distinguish these two marks as representing two separate companies based upon such small nuances. Many of the members also do not speak English as their primary language and such slight variations may not be noticed nor understood. *See* Oden Depo., p. 115; Volberding Depo., pp. 134–135; Oden Supp. Decl., ¶ 5; Exhibit "2" to the Oden Supp. Decl, showing plan documents printed in different languages. Finally, this Court also finds that the two marks have a similar meaning in that both represent HMOs.

### C. *The Class of Services Are Similar.*

This Court also finds that the class of services are similar. First, both marks are associated with HMOs. The evidence does demonstrate that the members targeted by United and Watts are currently different, but United admitted in discovery that it may expand its markets and target insureds to include areas such as Medicare and federal employees[7] which incorporate portions of Watts' business. Although it is undisputed that 60–70% of Watts' business involves Medi–Cal recipients and United's business does not involve Medi–Cal recipients, the crucial issue at the present time is the potential confusion that might be caused by these two marks during the current enrollment period in which nearly 3,000,000 Medi–Cal recipients will be choosing either a Local Initiative carrier or a designated private carrier for their new medical plan commencing August 1, 1996. In addition, federal employees will be choosing a health plan or possibly changing their existing plan during the open enrollment period which will commence in September 1996. Therefore, this Court finds that the class of services provided by both parties is similar.

### D. *Similar Marketing Channels Are Used.*

Although United spends a great deal of time discussing its use of agents, brokers and consultants and the different type of business it is targeting, United admits that it is using or intends to use radio, television, print advertisements and billboards which do not discriminate between viewers or readers. Individuals eligible for services with Watts will be just as likely read United advertisements as United's current alleged target audience. Therefore, this Court finds that the marketing channels used by both parties are also similar.

### E. *There Is Evidence Of Actual Confusion.*

The courts have found the following marks confusing: "Arise" and "Awake" for breakfast drinks; "Beauty–Rest" and "Beauty Sleep" for mattresses; "Beer Nuts" and "Brew Nuts" for nuts; "City Girl" and "City Woman" for clothing; and "Kant–Twist" and

---

6. United's contentions to the contrary are disingenuous especially when taking into account the names of businesses from which United has demanded a name change because their names were confusingly similar to the "United Healthcare" name: United Healthcare Services Inc., United Health Services Accounting, United Healthcare Group, Inc., United Chambers Health Corp., United Nursing and Health Care Services, and United Health Care Providers.

7. Due to the temporary restraining order granted by this Court, United is using the MetraHealth mark in competing for federal employee business at the present time to meet the deadlines for submission of materials.

"No–Twist" for C-clamps. *See* 1 J. McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 14.06, p. 14–25. The court have found that goods or services which were sufficiently related caused a likelihood of confusion. *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 465 (3d Cir.1983) (using the identical Lapp trademark for electrical products); *Marathon Manufacturing Co. v. Enerlite Products Corp.*, 767 F.2d 214, 220 (5th Cir. 1985) (involving the Marathon nickel cadmium battery and the Marathon 10–12 volt battery pack which consists of 101/2 volt nickel cadmium "D" size battery cells.); *Rodeo Collection Ltd. v. West Seventh*, 812 F.2d 1215, 1218–1219 (9th Cir.1987) (involving the service marks "Rodeo Collection" and "The Collection" which refer to two shopping centers); *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1391 (9th Cir.1993)(The two travel guides "The Travel Planner" and "OAG Travel Planner" were related but not in direct competition, and there was a sufficient likelihood of confusion); *United States v. Hon*, 904 F.2d 803, 807 (2d Cir.1990), *cert. denied*, 498 U.S. 1069, 111 S.Ct. 789, 112 L.Ed.2d 851 (1991) (involving an appeal from a criminal conviction for trafficking in and attempting to traffic in counterfeit wristwatches. The court looked to the Lanham Act for guidance on the issue of confusion recognizing that a non-purchaser's confusion is relevant to the inquiry, but the goods at issue were identical—the genuine watches versus the imitations); *Ameritech, Inc. v. American Information Technologies Corp.*, 811 F.2d 960, 964 (6th Cir.1987) (reverse confusion occurred where the two parties used the identical "Ameritech" mark for telecommunications wiring and equipment, and there was evidence of actual confusion); *Americana Trading, Inc. v. Russ Berrie & Co.*, 966 F.2d 1284, 1287 (9th Cir.1992) (involving the sale of stuffed bears in wedding outfits one under the "Wedding Bears" mark and the other with a tag using the words "Wedding Bear" attached to the stuffed bears); *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 957 (7th Cir.1992) (reverse confusion possible between the Gatorade advertisements calling Gatorade "thirst aid for that deep down body thirst" and the "Thirst Aid" mark for drinks);

*Banff, Ltd. v. Federated Department Stores, Inc.*, 841 F.2d 486, 490 (2d Cir.1988) (reverse confusion possible for use of the marks "Bee Wear" and "B Wear" for clothing sold in competing stores).

This Court has reviewed the numerous declarations and exhibits filed in support of and in opposition to the motion for preliminary injunction. Even though evidence of actual confusion is not required in granting a preliminary injunction, this Court finds that there is evidence that actual consumer confusion has occurred. Watts has presented evidence from consumers, Watts employees who took telephone calls from consumers indicating their confusion, and Oden himself who witnessed consumer confusion caused by the similarity of the two marks.

■ As noted earlier, United also maintains that no confusion will occur because it uses "sophisticated intermediaries" to place the majority of its business. The issue is not merely whether United's potential members will be confused but whether Watts' potential members and the public at large will be confused. These potential members may not know nor realize the difference between the two companies and the services they offer and if they contact United and are told that they do not provide the services they need they may choose an entirely different company in part believing that the two companies are related or affiliated in some way due to the similarity in their plan names.

This case involves two HMOs and even if some of members they target are different, it is highly likely that the public at large could not make that distinction. These are not two companies in wholly unrelated fields where there is no possible way a consumer could be misled or confused. Therefore, this Court finds that there is evidence of actual confusion by the public and that there is a strong likelihood of confusion in the future if these two marks are allowed to coexist in this state.

### F. *The Evidence Shows That United's Acts Were Intentional.*

The evidence shows that United has intentionally infringed Watts' mark. United executives knew of the existence of the "United Health Plan" mark and Watts' use of that

mark for its HMO in California. *See* Volberding Depo., pp. 32, 186. The evidence demonstrates that United also conducted three separate search reports which disclosed Watts' use of the "United Health Plan" mark. *See* Mandell Decl., ¶ 4 (copies of the search report were not filed due to United's labelling of these documents as confidential). It is also undisputed that Volberding telephoned Dr. Oden informing him of United's decision to change the name of its newly acquired HMO.

### 3. Watts Will Suffer Irreparable Injury If A Preliminary Injunction Is Not Issued.

■ Watts also contends that it will suffer irreparable injury if this Court does not issue the suggested preliminary injunction because it may lose potential members due to the confusion that will result because of the similarity between the marks. This Court agrees.

As this Court has already found these two parties are both HMOs, they both are targeting or intend to target overlapping areas of insureds, they employ the same advertising techniques or modes of advertising, and actual consumer confusion between these two companies has already occurred and will in all likelihood continue to occur.

Watts' immediate injury will result from confusion that will be caused to potential Medi–Cal recipients or federal employees who during their respective enrollment periods will be choosing new health plans. This Court finds that a preliminary injunction enjoining United from using its United Healthcare mark in Watts' established market area in the State of California consisting of the Counties of Los Angeles, Orange, Riverside, San Bernardino and Ventura to protect Watts' interests is warranted.

### 4. The Balance Of Hardships Tips In Watts' Favor Requiring A Preliminary Injunction.

■ Watts also contends that the balance of hardships tips in its favor because it has demonstrated a high probability of success on the merits. *Chalk,* 840 F.2d at 710. Watts contends that its goodwill and reputation can only be protected by the issuance of the requested preliminary injunction. United contends that the balance tips in its favor because it has already expended vast sums of money with regard to the "United Healthcare" mark. This Court finds that any monies expended by United in promoting, advertising or otherwise using the "United Healthcare" mark was accomplished at its own peril. As indicated *supra,* United was well aware of Watts' use of the "United Health Plan" mark since as early as 1986. Spending a lot of money in total disregard for Watts' rights given the obvious confusion that might occur is unjustifiable.[8] Further, United admits that it has expended little money in promoting the "United Healthcare" mark in this state. *See* Volberding Depo., pp. 96–97, 226–227. Watts has used the "United Health Plan" mark for sixteen years in this state and has expended great sums of money in advertising and promoting the "United Health Plan" mark for its HMO. As this Court's findings demonstrate *supra,* the balance of hardships strongly favors Watts and this Court grants the Preliminary Injunction against United, its officers, agents, employees, attorneys and all those acting on its behalf or in concert or conspiracy with them, enjoining them from the following:

1. using the service mark "United Healthcare" in Watts' established market area consisting of the California Counties of Los Angeles, San Bernardino, Riverside, Orange and Ventura;

2. selling, offering for sale, holding for sale, advertising, or promoting any ser-

---

8. United also contends that a preliminary injunction will violate its First Amendment rights, but no such right exists where a mark is used to confuse or is likely to confuse the public. *Gallo,* 955 F.2d at 1345; *Kelley Blue Book,* 802 F.Supp. at 291. In addition, the federal registration of the mark "United Healthcare" does not avoid Watts' dilution claim where the validity of that registration is directly in question.

vices utilizing trademarks or service marks which are confusingly similar to Watts' "United Health Plan" mark in Watts' established market area as set forth above; and

3. representing or implying in any manner that any service sold, held for sale, advertised or promoted by defendants is associated with, sponsored by, approved of, distributed by, or in any way legitimately connected with Watts.

In addition, this Court requires Watts to post a **bond of $10,000** during the pendency of the aformentioned preliminary injunction in this action.

IT IS SO ORDERED.