i. Prong One
The first prong of the Rogers test requires that the use of the trademark have "minimal" artistic relevance to the underlying work. Rogers, 875 F.2d at 1001. The bar is set low: "the level of relevance merely must be above zero." E.S.S. Entm't, 547 F.3d at 1100. Indeed, "even the slightest artistic relevance" will suffice; courts and juries should not have to engage in extensive "artistic analysis." Id. at 1243, 1245. Here, six of the nineteen songs on the album make direct use of "mastermind" in the lyrics, and one song, "Thug Cry," even directly references the overall album itself by its title[5] -linking the title to its contents. Declaration of William Leonard Roberts II ("Roberts Decl.") ¶ 2, ECF No. 76 ; id., Ex. L, Mastermind Album Lyrics, ECF No. 76-1. Moreover, Defendants have provided evidence of the use of the term "mastermind" as part of a larger, abstract theme used by artists in hip-hop claiming to be masterminds of music.[6] See Defs.' SUF ¶¶ 22-24; Declaration of Joshua S. Hodas ("Hodas Decl.") ¶¶ 9-11, ECF No. 75 ; id., Exs. G-I, ECF Nos. 75:7-10. For example, Defendants provided references in the press to various different hip-hop artists as "masterminds" like "hip-hop *950 mastermind Aubrey 'Drake' Graham." Hodas Decl., Ex. I at 14. The same use of the term is echoed in the lyrics of Defendants' album. See Roberts Decl., Ex. L.
Plaintiff has failed to offer any evidence demonstrating that Defendants' use of the mark has no artistic relevance to the underlying work, and consequently has failed to raise a genuine issue of material fact. In the absence of such evidence, and after considering Defendants' album as a whole, the Court finds that Plaintiff has not satisfied Rogers' prong one.
ii. Prong Two
The second Rogers prong requires that the use of the mark not "explicitly mislead[ ] as to the source or the content of the work." Rogers, 875 F.2d at 999. The relevant question is whether Defendants' use of "Mastermind" in their album and tour would confuse the public into thinking that Plaintiff is "somehow affiliated with or sponsored by" Defendants. Cohn, 281 F.3d at 841.
Plaintiff argues that the title of Defendants' album explicitly misleads as to the source of the work because Plaintiff's registration is for musical recordings-the exact same goods and services for which Defendants use the mark. Pl.'s Opp'n at 15:1-6. Further, Plaintiff disputes Defendants' assertion that nowhere in the title or lyrics do Defendants allude to Plaintiff by arguing that titling the album "Mastermind" is a direct reference to Plaintiff himself. Pl.'s Separate Statement Uncontroverted Facts ("Pl.'s SUF") ¶ 34, ECF No 78-2. While typically the Ninth Circuit has held that "mere use of a trademark alone cannot suffice to make such use explicitly misleading," E.S.S., 547 F.3d at 1095, each time it made that observation, the junior user had employed the mark in a different context than the senior user. See Gordon, 909 F.3d at 270. For example, in MCA Records, Mattel's Barbie was used in a song, and in Twentieth Century Fox, the mark of a record label was used in a television show. Id. The Ninth Circuit opined that had the junior user in these cases used the mark in the same way as the senior user, "such identical usage could reflect the type of 'explicitly misleading description.' " Gordon, 909 F.3d at 257.
When the use of the mark is the same between the junior and senior user, a second relevant consideration is "the extent to which the junior user has added his or her own expressive content to the work beyond the mark itself." Id. at 270. "As Rogers explains, the concern that consumers will not be 'misled as to the source of [a] product' is generally allayed when the mark is used as only one component of a junior user's larger expressive creation, such that the use of the mark at most 'implicitly suggest[s]' that the product is associated with the mark's owner." Id. at 270-71. The Ninth Circuit compared this to where the use of a mark "as the centerpiece of an expressive work itself, unadorned with any artistic contribution by the junior user," may qualify as explicitly misleading. Id. (citing S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm., 483 U.S. 522, 107 S.Ct. 2971, 97, 97 L.Ed.2d 427 (1987) ).
In Gordon, the creator of a YouTube video known for its trademarked catchphrases "Honey Badger Don't Care" and "Honey Badger Don't Give a S - - -" sued a greeting-card design studio for selling cards using the phrases with small variations. 909 F.3d at 260-63. The Ninth Circuit found there was a genuine issue of material fact as to Rogers' second prong, in part because the junior user used the mark in the same way as the senior user. Id. at 269-70. The Gordon court found there was a triable issue of fact as to whether the defendants simply used the mark with minimal artistic expression of *951 their own, and in the same way the plaintiff was using it, because defendants used the catchphrase without any other text, "knowing that consumers rely on marks on the inside of cards to identify their source." Id. at 271.
Here, in contrast to the defendants in Gordon using the Honey Badger catchphrase as the "centerpiece" of their greeting cards, Roberts is using "Mastermind" as one album title out of six albums throughout his career-a career which he has established as a renowned artist under the moniker "Rick Ross". The word "mastermind" appears in the lyrics of Defendants' album nine times across nineteen tracks, and even where the mark is used, it is through Roberts' own artistic expression. See generally Roberts' Decl., Ex. L. Moreover, Defendants' marketing of the "Mastermind" album attaches the "Rick Ross" persona and history as an artist to it. See Declaration of Raul Caiz ("Caiz Decl.") ¶ 8, ECF No. 78-4 ; id., Ex. B (article titled "Rick Ross Announces Title of Sixth Studio Album"). While Roberts has used "Mastermind" as a nickname following the release of his album, every instance where it was used it was accompanied by a clear indication that it is associated with "Rick Ross". For example, Roberts' website, www.rickrossmastermind.com, is titled "Rick Ross The Boss" and introduces him as "Rick Ross AKA Ricky Rozay AKA the Boss AKA The Mastermind." Declaration of Kris Demirjian ("Demirjian Decl.") ¶ 3, ECF No. 78-3 ; id., Ex. J, Rick Ross website, ECF No. 78-10. See also Demirjian Decl. ¶ 5; id., Ex. Q, Roberts' Dep. 77-78, ECF No. 78-11 (referring to himself as "the Boss Rick Ross" in addition to his "many nicknames"). In short, Plaintiff's music lists the artist as "Mastermind," see Caiz Decl., Ex. O (showing Plaintiff's EP "Man-Up" by "Mastermind"), while Defendants titled one of Roberts' albums and tours "Mastermind," while retaining some sort of reference to "Rick Ross" as the artist and incorporating Roberts' own artistic expression.
In response, Plaintiff only provides legal argument that Defendants' use of "Mastermind" in the same way is explicitly misleading, but points to no evidence indicating that Defendants' use even "implicitly suggest[s]" that the album is associated with Plaintiff, let alone any evidence of an overt association. Gordon, 909 F.3d at 271. The only evidence Plaintiff provides is set forth in Plaintiff's declaration, stating that his fans and fans of Rick Ross started asking him if a new album was coming out, "misleadingly thinking Defendant's album was [his]." Caiz Decl. ¶ 33. But Plaintiff does not identify any evidence to support this statement, and "the mere existence of a scintilla of evidence in support of plaintiff's position is insufficient [to deny summary judgment]; there must be evidence on which the jury could reasonably find for plaintiff." Anderson, 106 S. Ct. at 2512. Nor has Plaintiff provided any evidence showing that Defendants have indicated to the public that Plaintiff is associated with, sponsored, endorsed, or otherwise is the source of Defendants' album "Mastermind." Novalogic, Inc. v. Activision Blizzard, 41 F. Supp. 3d 885, 901 (C.D. Cal. 2013) (citations omitted) ("To be 'explicitly misleading,' a defendant's work must make some affirmative statement of the plaintiff's sponsorship or endorsement, beyond the mere use of the plaintiff's name or other characteristic.") ).
Plaintiff instead argues that this prong is met because reverse confusion amongst consumers is likely-seemingly importing a likelihood of confusion analysis into the second Rogers' prong. For example, Plaintiff cites *952 Wild v. HarperCollins Publrs., LLC, No. SACV 12-1191-JST (Anx), 2012 WL 12887690, at *5, 2012 U.S. Dist. LEXIS 196356, at *12-13 (C.D. Cal. Nov. 29, 2012), for its proposition that the Rogers' test adds the express qualification that its "limiting construction would not apply to misleading titles that are confusingly similar to other titles." The Court does not need to follow Wild's reasoning as it is persuasive authority at the motion to dismiss stage, and it does not conduct any analysis as to whether the book titles at issue there are explicitly misleading. Further, Wild was decided before the Ninth Circuit clarified in Gordon that only where a plaintiff satisfies one of the Rogers prongs, must a plaintiff then establish that the use of the mark is likely to cause confusion.[7] see Gordon, 909 F.3d at 265. Thus, the Court declines to import a likelihood of confusion analysis into the second Rogers prong.
Finally, Plaintiff argues that even if the Rogers test protects Defendants' use of the mark for their album name, it has no bearing on Defendants' other uses of the mark for the tour name, and as Roberts' persona in interviews and other live performances. Pl.'s Opp'n at 18. The Court finds this unconvincing because these are extensions of the use of the mark in an effort to advertise and market the "Mastermind" album. See Twentieth Century Fox, 875 F.3d at 1196-97 (finding use of the "Empire" mark beyond the title of a TV show, such as appearances by cast members, radio play, online advertising, live events, and sale of consumer goods, protected because "it requires only a minor logical extension of the reasoning of Rogers to hold that works protected under its test may be advertised and marketed by name, and we so hold.").
In sum, Plaintiff has not pointed to any evidence that creates a triable issue of material fact as to whether Defendants' album "Mastermind" explicitly misleads as to the source of the work. Because Plaintiff has failed to meet his burden to raise a genuine issue of material fact as to either Rogers' prong, the Court finds that Plaintiff cannot prevail on his infringement claim as a matter of law and GRANTS Defendants' Motion. As such, the Court declines to consider Defendants' remaining defense for fair use, and Defendants' request for summary judgment for cancellation of the mark, including that:(1) Plaintiff failed to meet the notice requirement; (2) Plaintiff used the mark as a signature and not a source identifier; (2) Plaintiff failed to use the mark in commerce in connection with all of the goods listed in Class 009; (3) Plaintiff committed fraud upon the USPTO in obtaining the trademark; and (4) Plaintiff abandoned the mark.
3. Remaining Claims
In its initial Order, the Court granted summary judgment as to Plaintiff's remaining claims of unfair competition, unjust enrichment, and misappropriation, because each was dependent on a finding of infringement of a protectable mark. Because the Ninth Circuit reversed the Court's cancellation of the mark, these *953 claims are now back before this Court. However, as the Court found that Plaintiff cannot prevail on his trademark infringement claim, the Court again GRANTS summary judgment in Defendants' favor as to Plaintiff's remaining claims. Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135, 1153 (9th Cir. 2002) ("dismissing claims under California's [Unfair Competition Law] as 'substantially congruent' to claims under the Lanham Act") (internal quotation marks and citations omitted). Bell v. Harley Davidson Motor Co., 539 F. Supp. 2d 1249, 1256 (S.D. Cal. 2008) (citing Toho Co., Ltd. v. Sears, Roebuck & Co., 645 F.2d 788, 791 (9th Cir. 1981) ("Black-letter law holds that California's common-law doctrine of misappropriation does not extend to trademark infringement claims."); McBride v. Boughton, 123 Cal.App.4th 379, 20 Cal. Rptr. 3d 115, 121 (2004) ("Unjust enrichment is not a cause of action ... or even a remedy, but rather a general principle, underlying various legal doctrines and remedies. It is synonymous with restitution.") (internal citations omitted).
III. CONCLUSION
Based on the foregoing, the Court GRANTS Defendants' Motion as to all of Plaintiff's remaining claims.
IT IS SO ORDERED.

The referenced lyrics are: "Mastermind, my 6th LP. Can't believe we did it. Man, I thank everybody that played a part of this. Shout out to my engineer E-Mix. Each and everyone one of you supporters. My fans, 100, muah." Declaration of William Leonard Roberts II ("Roberts Decl."), Ex. L, Mastermind Album Lyrics, ECF No. 76-1.

Plaintiff objects to Defendants' assertions that "mastermind" has been used widely in monikers by rappers, as song and album title or lyrics, and in rap journalism, as "lack[ing] foundation, vague and ambiguous as to 'widely used' and hearsay." Pl.'s Opp'n to Defs.' SUF ¶¶ 22-24, ECF No. 78-1. This is one of twenty-five evidentiary objections Plaintiff makes in Pl.'s Separate Statement Uncontroverted Facts ("Pl.'s SUF"), and each one is devoid of any argument. See ECF No. 78-1. The Court thus OVERRULES Plaintiff's objections because they "are boilerplate and devoid of any specific argument or analysis as to why any particular exhibit or assertion in a declaration should be excluded." United States v. HVI Cat Canyon, Inc., 213 F. Supp. 3d 1249, 1257 (C.D. Cal. 2016) ; see also Stonefire Grill, Inc. v. FGF Brands, Inc., 987 F. Supp. 2d 1023, 1033 (C.D. Cal. 2013) (refusing to "scrutinize each objection and give a full analysis of identical objections").

The other cases Plaintiff cites are equally unavailing. First, Plaintiff cites Masters for the proposition that Rogers does not apply to reverse confusion cases, which the Court already dismissed. Plaintiff also cites Watts Health Sys. v. United Healthcare Corp., 960 F. Supp. 1431, 1437 (C.D. Cal. 1996), which was decided prior to the Ninth Circuit's adoption of the Rogers test. Finally, Plaintiff cites to VIP Prods., LLC v. Jack Daniel's Props., Inc., 291 F. Supp. 3d 891 (D. Ariz. 2018), however, there the district court applied a likelihood of confusion analysis because it previously found that the Rogers test did not apply as there was no expressive work. See VIP Prods., LLC v. Jack Daniel's Props., Inc., No. CV-14-2057-PHX-SMM, 2016 WL 5408313, at *5 (D. Ariz. Sept. 27, 2016) ("In this case, the Court finds that the standard trademark likelihood of confusion analysis, not Rogers, is appropriate.").