**CALIFORNIA COOLER, INC.,**
Plaintiff-Appellee,

v.

**LORETTO WINERY, LTD. and APAM,**
**Inc., Defendants-Appellants.**

No. 84–2742.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 14, 1985.

Decided Oct. 28, 1985.

**1452**

D. Richard Urdan, Mathan Lane, III, Graham & James, San Francisco, Cal., James M. Amend, Michael S. Walsh, Kirk-

land & Ellis, Chicago, Ill., for plaintiff-appellee.

Ernest H. McCoy, Bruce & McCoy, William J. Murray, Belzer, Jackl, Katzen, Hulchiy & Murray, Oakland, Cal., for defendants-appellants.

Before GOODWIN, HUG, and SCHROEDER, Circuit Judges.

SCHROEDER, Circuit Judge.

This is a trademark action. Loretto Winery appeals from an order of the district court preliminarily enjoining it from, *inter alia*, using the name "California Special Cooler" or any other name confusingly similar to "California Cooler." California Cooler is the name of the product marketed by plaintiff-appellee, California Cooler, Inc. Because we reject Loretto's novel contention that California Cooler is estopped to maintain this action, and because the district court applied the correct legal standard and did not abuse its discretion, we affirm.

The name of plaintiff's product, California Cooler, was registered only on the supplemental register maintained by the United States Patent and Trademark Office. It was therefore not entitled to many of the special protections of the Lanham Act afforded marks registered on the principal register. 15 U.S.C. § 1094 (1982). Loretto's main legal argument is that registration on the supplemental register estops plaintiff from asserting any claim against a defendant who used the same or similar mark before the date of such registration. It contends that registration on the supplemental register constitutes an admission, conclusive in any subsequent litigation, that at least up until the time of registration on the supplemental register, the mark lacked either sufficient distinctiveness or secondary identification with the registrant's product to entitle it to any trademark protection. We agree with the dis-

trict court that there is no merit to this argument. We also hold that the district court did not err in granting plaintiff injunctive relief based on its showings that the mark had secondary meaning and that there was a likelihood of confusion.

## FACTS

Appellee, California Cooler, and appellants, Loretto Winery, Ltd. and APAM, Inc. (Loretto), are in the business of manufacturing and marketing a beverage generally known as a "wine cooler." This beverage consists of wine combined with other ingredients such as sparkling water and fruit juices. California Cooler began producing its wine cooler in 1981 under the name "California Cooler" and was the leader in the new market of wine coolers. In February 1984, California Cooler registered its mark "California Cooler" on the supplemental register. "California Cooler" is the appellee's sole product. Its sales increased from 150,000 cases in 1982 to 3,600,000 in the first six months of 1984. It grossed more than $38,000,000 during that time and spent $9,000,000 on advertising during the first nine and one-half months of 1984.

After California Cooler's initial success, a number of competitors, including Loretto, entered the wine cooler market. Loretto introduced its California special wine coolers and began using the mark "California Special Cooler" in January 1984. This was approximately two and one-half years after California Cooler entered the market and only one month before California Cooler registered the mark on the supplemental register.

California Cooler objects to the combination of the words "California" and "Cooler" in the name of one of Loretto's products, "California Special (Wine) Cooler." [1] The basis for its concern is illustrated by the labels which look roughly like the following reproductions.

California Cooler notified Loretto about its concern, and when Loretto refused to acknowledge any infringement or to change its label, California Cooler filed suit alleging violation of state and federal trademark laws. California Cooler moved for a preliminary injunction which the district court granted. The court determined that California Cooler would likely establish that its mark had obtained a secondary meaning and that Loretto's mark was confusingly similar to "California Cooler." The court further found that continued use of Loretto's "California Special Cooler" label would irreparably harm California Cooler. It ordered Loretto to collect, segre-

---

**1.** Three of Loretto's products, "Tropical Wine Cooler," "San Francisco Bay Wine Cooler," and "Johnny Apple Cooler," are not at issue here.

gate, and inventory all infringing merchandise, advertisements, labels, and packaging. Loretto appeals.

## DISCUSSION

■■■■ As a general rule, a mark is entitled to registration on the principal register if it is distinctive in and of itself. 15 U.S.C. § 1052 (1982). A mark which is "merely descriptive" is not entitled to registration on the principal register unless the Commissioner determines that it has become distinctive through acquisition of secondary meaning. 15 U.S.C. § 1052(f)(1982). *See Park 'N Fly, Inc. v. Dollar Park and Fly,* — U.S. ——, 105 S.Ct. 658, 662, 83 L.Ed.2d 582 (1985); *Transgo, Inc. v. AJAC Transmission Parts Corp.,* 768 F.2d 1001, 1014–15 (9th Cir.1985); *Surgicenters of America, Inc. v. Medical Dental Surgeries, Co.,* 601 F.2d 1011, 1014 (9th Cir.1979). Proof of "substantially exclusive and continuous use" for the five years preceding application for registration is acceptable as prima facie evidence of secondary meaning under subsection (f). Registration on the principal register shows that the Commissioner has determined that the mark is distinctive. Registration on the supplemental register means that the Commissioner has determined that the mark is "capable of distinguishing." 15 U.S.C. § 1091 (1982). *See also Application of Simmons Company,* 278 F.2d 517, 519 (C.C.P.A.1960).

California Cooler has never argued that its mark is so inherently distinctive that a showing of secondary meaning is unnecessary. Rather, it has sought in this litigation to establish that its mark, though descriptive, acquired secondary meaning before Loretto began using the mark at issue.

■■■■ Loretto's threshold defense is that registration on the supplemental register constituted a binding admission that a registrant could not prove that secondary meaning had been acquired as of the time of registration. Thus, argues appellant, the registrant is, by virtue of the supplemental registration, barred from establishing secondary meaning in subsequent litigation against any alleged infringers using the mark at the time of registration.

We are unable to find any support for such a proposition. The Lanham Act does not so provide. The only case we have found which considers such a contention, even indirectly, is contrary to Loretto's position. *Clairol, Inc. v. Gillette Co.,* 389 F.2d 264, 269 n. 9 (2d Cir.1968) ("We do not mean to imply that failure to contest a Patent Office determination that a mark is registrable only on the supplemental register is a concession that the mark is not, as used, distinctive of the applicant's goods.").

■■■■ Loretto's position would be plausible if registration on the principal list were a prerequisite for enforcement of trademark rights. That, however, is not the case. The existence of the principal register simplifies the task of a registrant in proving the validity of its mark. But registration, and concomitantly lack of registration, neither expands nor diminishes common law rights. As the Eighth Circuit has said, a trademark is "a common law property right that exists independently of statutory provisions for registration." *Sweetarts v. Sunline, Inc.,* 380 F.2d 923, 926 (8th Cir.1967). *See also Kellogg Co. v. National Biscuit Co.,* 305 U.S. 111, 117 n. 3, 59 S.Ct. 109, 113 n. 3, 83 L.Ed. 73 (1938) ("[I]t is well settled that registration under [the Trademark Act of 1920] has no effect on the domestic common-law rights of the person whose trade-mark is registered."). Thus deficiencies in registration, such as failure to renew, or even cancellation, do not affect common law trademark rights. *See generally* 4A R. Callman, *Unfair Competition Trademarks and Monopolies* § 25.03, at 14 (4th ed. 1983). Appellant asks us to hold that a manufacturer which registers on the supplemental register comes away with fewer rights than it would have had if it had not sought registration at all. This we decline to do.[2]

---

**2.** The legislative history of the Lanham Act reveals that one of Congress' major purposes was

We turn to whether the district court erred in its granting of the preliminary injunction based upon the evidence before it. Under the test applied by the district court, a moving party establishes its entitlement to preliminary relief if it demonstrates either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) that there exist serious questions regarding the merits and that the balance of hardships tips sharply in its favor. *Apple Computer, Inc. v. Formula International Inc.*, 725 F.2d 521, 523 (9th Cir.1984). *See also Los Angeles Memorial Coliseum Commission v. National Football League*, 634 F.2d 1197, 1201 (9th Cir.1980).

The district court concluded that California Cooler had demonstrated probable success on the merits in showing that "California Cooler" was a descriptive mark which had acquired a secondary meaning. It also found possible irreparable injury based on its finding that Loretto's mark is confusingly similar to "California Cooler." The court found that the name adopted by the defendant, "California Special Cooler," was similar to "California Cooler" and that the products are similar and marketed through the same channels. The court also found that the likelihood of confusion created a strong presumption of irreparable injury since Loretto's use of "California Special Cooler" threatened to dilute both the good will built up by the plaintiff and its sales.

Loretto points out that, because of their geographic and generic nature, neither the word "California" alone nor the word "Cooler" alone can qualify as marks capable of becoming distinctive. It further asserts that the combination cannot, as a matter of law, be capable of achieving distinctiveness.

■ California Cooler's mark is a composite term, and its validity is not judged by an examination of its parts. Rather, the validity of a trademark is to be determined by viewing the trademark as a whole. *See Union Carbide Corp. v. Ever-Ready Inc.*, 531 F.2d 366, 379 (7th Cir.), *cert. denied*, 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976). "Words which could not individually become a trademark may become one when taken together." *Id.* "A composite geographical mark should not be dissected into its parts to determine whether it is primarily geographical or not. It is the likely reaction of customers to the total mark that is at issue." 1 J. McCarthy, *supra*, § 14:6, at 496; *see also Estate of P.D. Beckwith, Inc. v. Commissioner of Patents*, 252 U.S. 538, 545–46, 40 S.Ct. 414, 416–17, 64 L.Ed. 705 (1920) ("The commercial impression of a trade-mark is derived from it as a whole, not from its elements separated and considered in detail."). Thus, the composite may become a distinguishing mark even though its components individually cannot.

Loretto argues in the alternative that the composite term "California Cooler" is a generic term which cannot become a registrable trademark under any circumstances. *See Surgicenters of America, Inc. v. Medical Dental Surgeries, Co.*, 601 F.2d 1011, 1014 (9th Cir.1979). It argues that the term has been widely understood in the beverage industry to mean a drink of wine mixed with citrus. The record, however, does not support this assertion.

■ Defendant's own promotional literature, as well as articles in newspapers and magazines, reflect that if any generic term exists for such a beverage, it is "wine cooler," not California Cooler. This court has held that in determining whether a term which is a combination of common words is generic or not, consumer perceptions are important. *See, e.g., Park 'N*

---

to aid in enforcement of trademark rights in foreign countries where statutory registration was a prerequisite for enforcement. *See* S.Rep. No. 1333, 79th Cong., 2d Sess., *reprinted in* 1946 U.S.Code Cong.Serv. 1276. The supplemental register was created to fulfill this purpose. 1 J. McCarthy, *Trademarks and Unfair Competition*

§ 19:18, at 663 (1973). There is nothing to indicate that it was intended to limit the scope of domestic litigation. Indeed the principal advantage of registration on the supplemental list is to confer federal jurisdiction on the federal courts for enforcement of the mark. *Id.* at 664.

**1456**

*Fly, Inc. v. Dollar Park & Fly, Inc.*, 718 F.2d 327, 330 (9th Cir.1983) ("Without evidence that to the consuming public the primary significance of the term [Park 'N Fly] is to denote the service Park 'N Fly offers and not its source, we are without a sufficient evidentiary basis to find Park 'N Fly's mark generic."), *rev'd on other grounds*, — U.S. ——, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985); *Surgicenters*, 601 F.2d at 1016 ("If buyers take the word to refer only to a particular producer's goods or services, it is not generic. But if the word is identified with all such goods or services, regardless of their suppliers, it is generic and so not a valid mark."). A survey of evidence submitted by California Cooler demonstrated that 75 percent of the persons questioned volunteered "California Cooler" as a brand of wine cooler. The district court also pointed out that it is undisputed that the plaintiff California Cooler used the term as a manufacturer exclusively for almost three years prior to the defendants' adoption of "California Special Cooler." The district court did not err in rejecting Loretto's defense that the term "California Cooler" was generic.

▮▮▮ The district court correctly analyzed the case as one in which the key question was the probability of plaintiff's success in establishing secondary meaning. The record is fully supportive of the district court's findings in this regard as well as its findings with respect to likelihood of confusion.

The appellants' remaining arguments are without merit.

AFFIRMED.