United States Court of Appeals,

Eleventh Circuit.

Nos. 94-8700, 95-8656 and 95-8767.

LONE STAR STEAKHOUSE & SALOON, INC., Plaintiff-Counterdefendant-Appellant,

v.

LONGHORN STEAKS, INC., Defendant-Appellee.

LONE STAR STEAKS, INC., Plaintiff-Counterdefendant-Appellee,

v.

LONE STAR STEAKHOUSE & SALOON OF GEORGIA, INC., Lone Star Steakhouse & Saloon, Inc., Defendants-Counterclaimants-Appellants.

Feb. 24, 1997.

Appeals from the United States District Court for the Northern District of Georgia. (Nos. 1:93-CV-2936, 2938-ODE), Orinda D. Evans, Judge.

Before COX and BLACK, Circuit Judges, and FAY, Senior Circuit Judge.

FAY, Senior Circuit Judge:

In these consolidated appeals and cross-appeals, we are asked to review various orders entered by the district court in a trademark infringement case.[1] Appellants and Cross-Appellees, Lone Star Steakhouse & Saloon, Inc. and Lone Star Steakhouse & Saloon of Georgia, Inc. ("Plaintiff"),[2] and Appellees and Cross-Appellants,

---

[1] The parties in this appeal each filed separate but related complaints in the United States District Court for the Northern District of Georgia:  Case No. 93-CV-2963 and Case No. 93-CV-2938.  The two cases were consolidated pursuant to Rule 42(a) of the Federal Rules of Civil Procedure.

[2] Although Lone Star Steakhouse & Saloon of Georgia, Inc. is listed as a separate defendant in Case No. 93-CV-2938, it is a wholly-owned subsidiary of Lone Star Steakhouse & Saloon, Inc. To simplify our discussion, we treat the two corporations as a single entity, and we consequently refer to only one "Plaintiff."

Lone Star Steaks, Inc. and Longhorn Steaks, Inc. ("Defendant"),[3] are involved in the restaurant business.  The parties' main dispute surrounds which party's trade name for restaurant services, Plaintiff's LONE STAR STEAKHOUSE & SALOON and LONE STAR CAFE or Defendant's LONE STAR STEAKS, has prior and superior rights.  The United States District Court for the Northern District of Georgia, concluded that Defendant's rights were superior in Georgia, and thus granted Defendant's motion for a preliminary injunction. Subsequently, the district court (1) entered a clarification order discussing the scope of the preliminary injunction, (2) entered a permanent injunction against Plaintiff, enjoining it from using the LONE STAR STEAKHOUSE & SALOON mark in Georgia, (3) awarded Defendant damages, attorneys' fees, costs, and final judgment on its pendent state law claims, and (4) entered two separate orders further explaining the relief.  The issues raised in this consolidated appeal arise from these various orders.  For the reasons discussed below, we affirm the district court in all of its rulings, except that part of the district court's order which grants Defendant attorneys' fees under Georgia law.  However, in vacating the award of attorneys' fees under Georgia law, we remand the matter to the district court to determine if Defendant is entitled to attorneys' fees under the Lanham Act.

Plaintiff operates over one hundred and seventy "Lone Star Steakhouse & Saloon" restaurants throughout the United States.  The first such restaurant was opened in October 1989 in Winston Salem,

_____

[3]Again, for simplicity's sake, we treat these separate entities as if they were one.

North Carolina, and since then the business has expanded considerably. In connection with these restaurants, Plaintiff holds a federal trademark registration for the mark LONE STAR STEAKHOUSE & SALOON. This registration covers various clothing items, but does not cover restaurant services.[4] Additionally, Plaintiff holds a federal trademark registration for the mark LONE STAR CAFE. The LONE STAR CAFE mark covers both clothing items and restaurant services. The mark covering restaurant services was registered in 1981 by a New York City nightclub operator. Plaintiff's predecessor corporation purchased the LONE STAR CAFE mark from the nightclub in 1992; the mark was later transferred to Plaintiff.[5]

---

[4]Plaintiff has an application for the mark LONE STAR STEAKHOUSE & SALOON, which does cover restaurant services, now pending before the United States Patent and Trademark Office.

[5]More specifically, Plaintiff describes its trademarks as follows:

> A. United States Service Mark Registration No. 1,555,907, issued on May 26, 1981 for the mark LONE STAR CAFE, which registration is now incontestable under 15 U.S.C. § 1065. This registration covers restaurant services and nightclub services featuring musical entertainment.

> B. United States Trademark Registration No. 1,318,227, issued on February 5, 1985 for the mark LONE STAR CAFE, which registration is now incontestable under 15 U.S.C. § 1065. This registration covers adult clothing for everyday wear—namely, men's and women's jackets, sweatshirts, T-shirts, hats, ball caps, vests, boots, shoes, socks, shirts, jeans, and trousers, and tie tacks, and belt buckles.

> C. United States Trademark Registration No. 1,731,247, issued on November 10, 1992 for the mark LONE STAR STEAKHOUSE & SALOON. This registration covers clothing: namely, men's and women's sport shirts, sweatshirts, polo shirts, and caps.

Defendant operates two "Lone Star Steaks" restaurants in Atlanta, Georgia.[6] The first Lone Star Steaks was opened in 1984, and in that same year, the LONE STAR STEAKS mark was registered as a trade name in several of Georgia's metropolitan counties. In March of 1992, the mark was registered as a service mark with the Georgia Secretary of State.

In August 1992, Plaintiff's general counsel sent a letter to Defendant stating that Plaintiff was planning to expand into Georgia; Plaintiff demanded that Defendant stop its use of the mark LONE STAR STEAKS. Defendant's counsel responded with the assertion that Defendant had prior and superior rights in its mark. In August 1993, Plaintiff opened a Lone Star Steakhouse & Saloon restaurant in Augusta, Georgia. By letter dated October 22, 1993, Defendant demanded that Plaintiff cease and desist its use of the LONE STAR STEAKHOUSE & SALOON mark. After Plaintiff refused to comply, Defendant filed suit. Plaintiff filed suit on the same day. Both complaints alleged violations of the Lanham Act, 15 U.S.C. §§ 1051-1127 (1994), as well as other pendent state law claims. More specifically, both sides alleged violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), which creates a federal cause of action for unfair competition by prohibiting the

D. United States Service Mark Application No. 74-248,299, for the mark LONE STAR STEAKHOUSE & SALOON, which application is presently pending in the United States Patent and Trademark Office. This application covers restaurant services.

R1-1-3.

[6]As a result of Longhorn Steaks' acquisition of Lone Star Steaks, a Lone Star Steaks' restaurant has been converted to a Longhorn Steaks' restaurant.

use in interstate commerce of any "false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same...." 15 U.S.C. § 1125(a).  In order to prevail on this claim, each party had the burden of showing (1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two. *Conagra, Inc. v. Singleton,* 743 F.2d 1508, 1512 (11th Cir.1984);  *see also Investacorp, Inc. v. Arabian Inv. Banking Corp.,* 931 F.2d 1519, 1521-22 (11th Cir.), *cert. denied,* 502 U.S. 1005, 112 S.Ct. 639, 116 L.Ed.2d 657 (1991).

Plaintiff and Defendant agreed that the use of Plaintiff's LONE STAR STEAKHOUSE & SALOON mark together with the use of Defendant's LONE STAR STEAKS mark created and would continue to create consumer confusion.  The district court was thus faced with the sole task of determining which party had prior and superior rights to its mark.  Not surprisingly, each party believed its rights were superior to the other's, and each moved for a preliminary injunction to enjoin the other's use.

Defendant's first used the LONE STAR STEAKS mark in January of 1984, while Plaintiff's first used the LONE STAR STEAKHOUSE & SALOON mark in October of 1989.  Based on these dates, Defendant argued that its mark had prior and superior rights over Plaintiff's mark.  Plaintiff, in turn, argued that its LONE STAR STEAKHOUSE & SALOON mark had priority because of the 1981 federal registration of the LONE STAR CAFE mark.  In support of this argument, Plaintiff

pointed to the fact that it used both marks in the sale and advertising of its restaurant services. Plaintiff also pointed to the fact that the words "Lone Star" were the dominant, identifying features of both parties' marks. Accordingly, Plaintiff contended that in determining infringement and priority, the court should consider which party first developed rights in the words "Lone Star," without regard to the accompanying generic words. The district court rejected Plaintiff's arguments, denied Plaintiff's motion for a preliminary injunction,[7] and by granting Defendant's motion for a preliminary injunction, prohibited Plaintiff from using the LONE STAR STEAKHOUSE & SALOON mark in the state of Georgia.[8]

---

[7]Plaintiff filed an appeal challenging the district court's denial of its motion for a preliminary injunction. That appeal has been carried with the other appeals pertaining to this case and is presently before this Court.

[8]More specifically, the order granting Defendant's preliminary injunction stated:

> Plaintiff is hereby enjoined, together with its agents, subsidiaries, affiliates, franchisees and assigns (including Lone Star Steakhouse & Saloon of Georgia, Inc.), from (a) using the LONE STAR STEAKHOUSE & SALOON [mark], the trade name Lone Star Steakhouse & Saloon, or any other colorable or similar imitation of either the LONE STAR STEAKS mark or the LONE STAR STEAKHOUSE & SALOON [mark], in connection with the operation of any restaurant in Georgia or in connection with the sale, offering for sale, promotion, marketing, or advertising of their restaurants, goods or services in Georgia and (b) otherwise infringing upon Lone Star Steaks' service marks and registrations therefore in the State of Georgia. Plaintiff is further ORDERED to take prompt, affirmative action to change the name of their restaurant in Augusta, Georgia and to withdraw from the public any advertisements or promotional materials which contain or use the LONE STAR STEAKHOUSE & SALOON mark in relation to its restaurant in Augusta, Georgia.

Plaintiff subsequently filed a motion seeking clarification and modification of the preliminary injunction order. Plaintiff sought an order from the court that would allow it to use the federally registered LONE STAR CAFE mark in Georgia. The court granted the motion partly because it was not convinced the LONE STAR STEAKS mark and the LONE STAR CAFE mark were similar enough to cause confusion.[9]

Defendant thereafter moved for summary judgment, and requested the court (1) to enter a permanent injunction against Plaintiff, (2) to cancel Plaintiff's LONE STAR STEAKHOUSE & SALOON clothing registration, and (3) to enter final judgment on Defendant's claims for monetary damages, attorneys' fees, and costs. The district court granted in part Defendant's motion for summary judgment and made the following rulings: (i) granted Defendant's motion for a permanent injunction; (ii) denied Defendant's motion to cancel Plaintiff's nationwide registration of its mark for clothing; (iii) granted final judgment on Defendant's claims under (a) the Georgia Uniform Deceptive Practices Act, O.C.G.A. §§ 10-1-371 to -375, (b) the Georgia Fair Business Practices Act of 1975, O.C.G.A. §§ 10-1-390 to -407, (c) as well as on its claim for infringement of a registered mark under O.C.G.A. § 10-1-450, (iv) denied without prejudice Defendant's request for the profits Plaintiff made from its Augusta restaurant during the period of infringement; (v) granted Defendant's motion for summary judgment under O.C.G.A. 10-

R3-43-27-28.

[9]Defendant appealed the clarification order in appeal no. 94-8734. On January 17, 1996, this Court granted the parties' joint motion to dismiss that appeal as moot.

1-450 for liquidated damages in the amount of $10,000.00; (vi) denied Defendant's request for attorney fees under the Lanham Act; (vii) granted Defendant's attorneys' fees pursuant to Georgia's Fair Business Practices Act, O.C.G.A. § 10-1-399(d); and finally, (viii) granted Defendant's request for costs under both the Lanham Act and Georgia statutes.

At the conclusion of the order granting in part Defendant's motion for summary judgment, the district court directed the parties to file briefs concerning whether Defendant was entitled to profits from the operation of Plaintiff's Augusta restaurant during the time of infringement, the amount of attorneys' fees and costs Defendant could collect, and a proposed order containing language for the permanent injunction. The district court conducted an evidentiary hearing on these and other issues. Following the evidentiary hearing, the district court entered an order that (i) permanently enjoined Plaintiff from using either the LONE STAR STEAKHOUSE & SALOON mark or LONE STAR STEAKS mark in connection with the operation of any restaurant(s) in Georgia, (ii) canceled Plaintiff's clothing registration within the state of Georgia and directed the United States Patent and Trademark office to issue Defendant a clothing registration within Georgia for its LONE STAR STEAKS mark, (iii) awarded Defendant $50,000.00 of the profits from Plaintiff's Augusta restaurant pursuant to 15 U.S.C. § 1117(a), (iv) awarded Defendant attorneys' fees in the amount of $99,868.50, and (v) awarded Defendant costs in the amount of $13,754.17. Thereafter, Plaintiff again sought a clarification of the permanent injunction's language; again the court ruled that the permanent

injunction did not enjoin Plaintiff's use of the LONE STAR CAFE mark within the state of Georgia. In this clarification order, the court also awarded Defendant additional attorneys' fees and costs in the respective amounts of $12,073.99 and $743.70.

On appeal, the parties contest the various orders entered by the district court. Plaintiff argues that the district court erred: (1) in denying its motion for preliminary injunction, (2) in granting in part Defendant's motion for summary judgment with regard to its request for a permanent injunction, and (3) in awarding Defendant's profits, attorneys' fees and liquidated damages.

In its appeal, Defendant argues: (4) that Plaintiff's appeal of the district court's denial of its motion for preliminary injunction is moot or in the alternative that the motion was properly denied; (5) that the district court erred in its order clarifying the scope of the permanent injunction to allow Lone Star Steakhouse & Saloon to use the LONE STAR CAFE mark to identify its restaurant in Georgia; and (6) the district court erred in refusing to completely cancel Plaintiff's clothing registration mark, "or at least in failing to hold further proceedings on the issue of whether Lone Star Steakhouse & Saloon [was] entitled to concurrent registration of this mark."

Because we believe our ruling on Plaintiff's appeal of the permanent injunction (issue # 2), will effectively resolve both Plaintiff's appeal of the preliminary injunction order (issue # 1) and Defendant's suggestion that Plaintiff's appeal of the preliminary injunction is moot (issue # 4), we will first address

Plaintiff's appeal of the permanent injunction.[10]

As stated earlier, to prevail under 15 U.S.C. § 1125(a), a party must show (1) that it had prior rights to its mark or name and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two. *See Conagra Inc. v. Singleton,* 743 F.2d 1508, 1512 (11th Cir.1984). It is undisputed that the parties' respective marks created confusion among the restaurants' consumers. Thus, the dispute centered around which party had the prior and superior rights to its mark. In granting Defendant's motion for preliminary injunction, the district court concluded that Defendant's mark was the superior mark. Thereafter, Defendant filed a motion for summary judgment seeking in part a permanent injunction on its claims of trademark infringement. The district court again found that Defendant's mark was the superior mark and granted Defendant's request for a permanent injunction.

On appeal, Plaintiff argues that the district court erred in concluding that Defendant's mark is superior and consequently in granting Defendant's request for a permanent injunction. Instead, Plaintiff believes its acquired LONE STAR CAFE mark is the superior mark and that it is entitled to prevail on the trademark infringement claims. In support of this contention, Plaintiff advances the following arguments: First, Plaintiff argues that its

---

[10]Our discussion of the district court's order granting Defendant a permanent injunction applies equally to Plaintiff's appeal of the preliminary injunction. For the same reasons we believe the district court was correct in granting a permanent injunction, we believe the district court was correct in denying Plaintiff's motion for a preliminary injunction.

prior federally registered LONE STAR CAFE mark is superior to Defendant's state registered LONE STAR STEAKS mark. Second, Plaintiff asserts that the words "Lone Star" were the dominant, identifying features of both parties' marks. Accordingly, Plaintiff contends that in determining infringement and priority, the court should consider which party first developed rights in the words "Lone Star," without regard to the accompanying generic words. Since Plaintiff's purchased rights in the LONE STAR CAFE mark date back to 1981, it argues that it was first in developing rights in the words "Lone Star." Next, Plaintiff attempts to argue that it was adequately using the LONE STAR CAFE mark to identify its restaurant services. Finally, Plaintiff contends that since it complied with the district court's preliminary injunction order by using the LONE STAR CAFE mark to identify its restaurant, the district court erred in granting Defendant a permanent injunction.

All of Plaintiff's arguments listed above were considered and rejected by the district court. Moreover, Plaintiff concedes that there are no genuine issues of material fact. Plaintiff further agrees that the questions presented on appeal are purely legal. Thus, to the extent that Plaintiff argues the district court erred in granting Defendant's motion for a permanent injunction, the error must be that the district court failed to apply the correct law or misapplied the law. Accordingly, we will review the district court's legal conclusions de novo. *Great Lakes Dredge & Dock v. Tanker Robert Watt Miller,* 92 F.3d 1102, 1106 (11th Cir.1996). In sum, our review of the relevant law and the cases cited by the parties lead us to conclude that the district court

properly applied the law and was correct in granting Defendant's motion for summary judgment as it pertains to Defendant's request for a permanent injunction.

For instance, Plaintiff cites *John R. Thompson Co. v. Holloway,* 366 F.2d 108 (5th Cir.1966) and *Dawn Donut Co. v. Hart's Food Stores, Inc.,* 267 F.2d 358 (2d Cir.1959) for the proposition that the senior owner of a federal registration has nationwide priority over all junior users. In support of this proposition, Plaintiff attempts to argue that Defendant's first use of its mark in 1984 is inferior to Plaintiff's 1992 acquisition of the LONE STAR CAFE mark which was federally registered in 1981. The district court concluded otherwise.

The parties agree that factually the LONE STAR CAFE mark was used on a sign displayed on an interior wall of Plaintiff's Augusta Restaurant. The district court found as a matter of law that this did not constitute a valid service mark use because it was not being used to identify or distinguish the services being offered. We agree.[11]

---

[11]15 U.S.C. § 1127 states:

The term "service mark" means any word, name, symbol, or device, or any combination thereof—

(1) used by a person, or

(2) which a person has a bona fide intention to use in commerce and applies to register on the principal register established by this chapter, to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services, even if that source is unknown. Titles, character names, and other distinctive features of radio or television programs may be registered as service marks notwithstanding that they, or the programs, may advertise the goods of the sponsor.

The Plaintiff then argues that it has prior rights in the words "Lone Star" through its acquisition of the LONE STAR CAFE mark. Plaintiff relies upon its prevailing in *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.,* 43 F.3d 922 (4th Cir.1995). In *Alpha of Virginia,* plaintiff Lone Star Steakhouse & Saloon, Inc., filed suit against defendant Alpha of Virginia, Inc., alleging defendant violated the Lanham Act and other state laws by operating a restaurant under the name "Lone Star Grill." The defendant there began operating the "Lone Star Grill" in 1991, after plaintiff's 1981 federal registration of the LONE STAR CAFE mark. The district court agreed with plaintiff that defendant violated the Lanham Act and entered a permanent injunction enjoining defendant from using any mark containing the words "Lone Star." Defendant appealed. On appeal, the Fourth Circuit rejected defendant's argument that the federal registration of LONE STAR CAFE did not extend to the words "Lone Star," stating:

> The original federal registration of "Lone Star Cafe" effectively gave Max Shayne the exclusive right to use the term "Lone Star" because the registration explicitly disclaimed the word "Cafe" apart from the complete mark "Lone Star Cafe," *see* Registration number 1,155,907; and this right to use the mark "Lone Star" was subsequently assigned to Lone Star Steakhouse. Furthermore, the mark "Lone Star," apart from "Cafe," is important to this case because this Court has held that courts should concentrate on the words not disclaimed in assessing the likelihood of confusion necessary for trademark infringement. *See Pizzeria Uno Corp. v. Temple,* 747 F.2d 1522, 1529-30 (4th Cir.1984).

*Alpha of Virginia,* 43 F.3d at 926 n. 1. In the case before us, the district court reached a contrary conclusion on somewhat similar facts. The district court found that Plaintiff's "1981 federal registration applies to the LONE STAR CAFE mark as a composite whole and does not establish priority to the general ...

descriptive term "Lone Star' by itself." R3-43-24. The district court added that:

> Plaintiff has no federal registration for the words "Lone Star" by themselves. In determining whether a composite mark such as LONE STAR CAFE is entitled to protection, courts do not assess the individual parts of the name. McCarthy at § 14.06; *California Cooler, Inc. v. Loretto Winery, Ltd.,* 774 F.2d 1451, 1455 (9th Cir.1985). Instead, the validity of a composite mark is determined by looking at the mark as a whole. McCarthy at § 14.06; *California Cooler,* 774 F.2d at 1455.

R3-43-23-24. In addition, the district court specifically considered and rejected Plaintiff's argument that it has exclusive right to the words "Lone Star" because it disclaimed the word "Cafe" from its LONE STAR CAFE registration covering restaurant services. The district court, quoting from a leading commentator on trademark and unfair competition law stated:

> The disclaimer does not have the effect of removing from the registered mark the matter disclaimed. It disclaims only a claim that the federal registration gives an exclusive right in those disclaimed words or symbols per se. That is, *the applicant is merely stating that he is claiming only the whole composite mark as his property,* and makes no claim to those particular portions disclaimed.

R3-43-24 (quoting *McCarthy on Trademarks and Unfair Competition,* (3d ed. 1992) at § 19.20[1] (emphasis added)). With great respect for the Fourth Circuit, we believe the district court correctly applied the controlling principles of law.

The district court properly concluded that the validity of Plaintiff's LONE STAR CAFE mark is to be determined by viewing the trademark as a whole and not just the words "Lone Star." *Estate of P.D. Beckwith, Inc. v. Commissioner of Patents,* 252 U.S. 538, 545-46, 40 S.Ct. 414, 416-17, 64 L.Ed. 705 (1920) ("The commercial impression of a trade-mark is derived from it as a whole, not from

its elements separated and considered in detail."); *see also California Cooler v. Loretto Winery, Ltd.,* 774 F.2d 1451, 1455 (9th Cir.1985) ("[T]he validity of a trademark is to be determined by viewing the trademark as a whole.") (citing *Union Carbide Corp. v. Ever-Ready Inc.,* 531 F.2d 366, 379 (7th Cir.), *cert. denied,* 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976)). In addition, the district court appropriately found that Plaintiff's disclaimer of the word "Cafe" from its registration of the LONE STAR CAFE mark does not establish priority to the words "Lone Star." *See Country Floors, Inc. v. Partnership Composed of Gepner and Ford,* 930 F.2d 1056, 1065 (3d Cir.1991) ("The descriptive portions of a mark can be disclaimed, although the entire composite mark, including the descriptive terms, is considered for purposes of infringement."); *Giant Food, Inc. v. Nation's Foodservice, Inc.,* 710 F.2d 1565, 1570 (Fed.Cir.1983) ("[I]t is well settled that the disclaimed material still forms a part of the mark and cannot be ignored in determining likelihood of confusion."); *Schwarzkopf v. John H. Breck, Inc.,* 340 F.2d 978, 980 (C.C.P.A.1965) (court agreeing with statement "It is of course well established that disclaimed material forming part of a trademark cannot be ignored in determining whether the marks are confusingly similar."). Accordingly, we agree with the district court's that Plaintiff is not entitled to priority over the descriptive words "Lone Star."

As to Plaintiff's remaining arguments that its mark is superior, for the reasons discussed in the district court's orders, we summarily agree with the district court's application of the law and affirm the district court's ruling granting Defendant's motion

for summary judgment as it pertains to the permanent injunction.

Plaintiff also appeals from the portions of the district court's orders that awarded Defendant: (1) profits pursuant to 15 U.S.C. § 1117(a), (2) attorneys' fees under the Georgia Fair Business Practices Act, O.C.G.A. §§ 10-1-390 to -407, and (3) liquidated damages under O.C.G.A. § 10-1-450.

*I. Profits*

Under the Lanham Act, a successful party "subject to the principles of equity" may recover: "defendant's [the infringer's] profits; (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a); *See Babbit Electronics, Inc. v. Dynascan Corp.,* 38 F.3d 1161, 1182 (11th Cir.1994). After hearing uncontradicted evidence on the issue, the district court determined that the principles of equity weighed in Defendant's favor and awarded Defendant $50,000.00 of the profits from Plaintiff's Augusta, Georgia restaurant. The district court's findings of profits are questions of fact subject to the clearly erroneous standard of review. *St. Charles Mfg. Co. v. Mercer*, 737 F.2d 891, 893 (11th Cir.1983) (citing *Boston Professional Hockey Ass'n Inc. v. Dallas Cap & Emblem Mfg., Inc.,* 597 F.2d 71, 76 (5th Cir.1979)). We do not believe the district court was clearly erroneous in awarding Defendant these profits. Accordingly, we affirm the award.

*II. Attorneys' Fees*

Defendant sought recovery of its attorneys' fees under both the Lanham Act and Georgia law. The Lanham Act authorizes reasonable attorneys' fees "in exceptional cases." 15 U.S.C. §

1117(a). "[E]xceptional cases are those where the infringing party acts in a "malicious,' "fraudulent,' "deliberate,' or "willful' manner." *Burger King Corp. v. Pilgrim's Pride Corp.,* 15 F.3d 166, 168 (11th Cir.1994). The district court, unsure if the present case constituted an "exceptional case," circumvented the question of attorneys' fees under the Lanham Act. However, the district court granted Defendant's attorneys' fees under the Georgia Fair Business Practices Act ("FBPA"). O.C.G.A. § 10-1-399(d). In awarding these fees, the district court rejected Plaintiff's arguments that only consumers may bring actions under the FBPA and that the Lanham Act preempts the FBPA's attorney's fees statute.

On appeal, Plaintiff again argues that the FBPA only provides relief for consumers and not competitors. Thus, the argument goes that Defendant a non-consumer is not entitled to FBPA coverage and an award of attorneys' fees. In support of this argument, Plaintiff cites a case not available to the district court at the time of its decision. In *Friedlander v. PDK Labs, Inc.,* 266 Ga. 180, 465 S.E.2d 670 (1996), the Georgia Supreme Court in response to a question certified by this Court in *Friedlander v. PDK Labs, Inc.,* 59 F.3d 1131 (11th Cir.1995), recently held that:

> A person who suffers injury or damages, or whose business or property has been injured or damaged, as a result of consumer acts or practices may bring an action under FBPA "individually, but not in a representative capacity...." OCGA § 10-1-399(a). A suit predicated upon an alleged violation of the FBPA must be brought in the plaintiff's "capacity as an individual member of the consuming public...." *Zeeman v. Black,* 156 Ga.App. 82, 84, 273 S.E.2d 910 (1980). *See also Gross v. Ideal Pool Corp.,* 181 Ga.App. 483, 484(1), 352 S.E.2d 806 (1987). A suit is not brought in the capacity of an individual member of the consuming public when the plaintiff's only allegation of an injurious consumer act or practice relates to representations made by his competitor in the marketing of competing products to the general consuming

> public. Of course, if a business, as a consumer, sustains
> damage, it may bring suit under OCGA § 10-1-399(a). OCGA §§
> 10-1-391(a); 10-1-392(a)(7). However, we are not empowered
> to expand the coverage of the FBPA to provide a cause of
> action to non-consumers against their competitors. *See State
> of Ga. v. Meredith Chevrolet Inc.,* supra [145 Ga.App. 8,] 13-
> 14(2), 244 S.E.2d 15 [ (1978) ].

*Friedlander,* 465 S.E.2d at 671. Defendant relying on the following language "if a business, as a consumer, sustains damage, it may bring suit under [the FBPA]," argues it is entitled to bring suit under the FBPA and recover attorneys' fees. Yet, Defendant fails to explain how it is a consumer who has sustained damage. Moreover, it seems Defendant is a non-consumer attempting "to expand the coverage of the FBPA to provide a cause of action ... against their competitors [Plaintiff]," which the Georgia Supreme Court refused to do. *Id.* Accordingly, based on this recent development in FBPA law, we vacate the award of attorneys' fees under the FBPA. However, we remand the case to allow the district court to determine if the case is an exceptional one entitling Defendant to an award of attorneys' fees under the Lanham Act.

## III. Liquidated Damages

Finally, Plaintiff appeals from the district court's award of liquidated damages under O.C.G.A. § 10-1-450. As the district court stated, "Under § 10-1-450, a prevailing party is entitled to $10,000.00 in liquidated damages for an act of infringement "if such act has been committed with knowledge that the trademark or service mark has been registered under this part and such act has been committed without previously obtaining the consent of the owner thereof.' " There is no dispute that Plaintiff knew of Defendant's Georgia registration prior to the opening of

Plaintiff's Georgia's restaurant.  Thus, liquidated damages are proper under Georgia law.

We now turn our attention to Defendant's two appeals:  First, Defendant appeals from the clarification order allowing Plaintiff to use the LONE STAR CAFE mark to identify its restaurant.  Second, Defendant appeals from the district court's order that only partially canceled Plaintiff's clothing registration within the state of Georgia.

For the same reasons discussed in the district court's clarification of the preliminary injunction, the district court in its modification of the permanent injunction order permitted Plaintiff to use the LONE STAR CAFE mark in Georgia.  Defendant argues that since Plaintiff has been found guilty of trademark infringement, well-established trademark law requires the injunction to be broad enough to keep Plaintiff "a safe distance away from the dividing line between violation of, and compliance with, the injunction."  *Howard Johnson Co. v. Khimani,* 892 F.2d 1512, 1517 (11th Cir.1990) (quoting *Eskay Drugs v. Smith, Kline & French Laboratories,* 188 F.2d 430, 432 (5th Cir.1951)).  The district court considered and dismissed this argument.  The district court found that Defendant is unlikely to prevail on the merits that its LONE STAR STEAKS mark has priority over Plaintiff's LONE STAR CAFE mark.

We review for abuse of discretion a district court's modification of a permanent injunction.  *See Beefy King Int'l Inc. v. Veigle,* 464 F.2d 1102, 1104 (5th Cir.1972).  The district court provided several reasons why it thought Plaintiff was entitled to

use the LONE STAR CAFE mark and why it modified the scope of the permanent injunction. Any of the reasons provided by the district court could justify the modification of the permanent injunction. We find no abuse of discretion.

As to Defendant's second issue on appeal, Defendant contends that the district court erred as a matter of law in failing to completely cancel the clothing registration for Plaintiff's LONE STAR STEAKHOUSE & SALOON mark. In the alternative, Defendant argues that in canceling Plaintiff's registration in Georgia, the district court has effectively given Plaintiff a concurrent registration without determining whether Plaintiff is entitled to a concurrent registration. Because Defendant argues that the district court misapplied the law in only partially canceling Plaintiff's mark or erred in not holding a hearing to determine if Plaintiff is entitled to concurrent registration, we will review the district court's application of the law de novo. *E. Remy Martin & Co. v. Shaw Ross Intern. Imports,* 756 F.2d 1525, 1529 (11th Cir.1985).

The district court entered an order directing the United States Patent and Trademark Office to issue Defendant a clothing registration mark for its LONE STAR STEAKS mark within Georgia, and to cancel Plaintiff's LONE STAR STEAKHOUSE & SALOON clothing mark within the state of Georgia. Interpreted differently, the district court's order could be construed as a concurrent registration allowing Defendant to use its mark in Georgia while simultaneously allowing Plaintiff to use its mark everywhere but Georgia. Although Defendant sought nationwide cancellation of Plaintiff's

clothing registration, the district court found "that cancellation of this scope was not warranted, since during a previous hearing Lone Star Steaks' counsel had conceded that the potential area of trademark confusion was confined to Georgia." R5-81-3.

Initially, we find that in territorially restricting Plaintiff's and Defendant's marks, the district court must have issued a concurrent registration. *See Snuffer & Watkins Management, Inc. v. Snuffy's, Inc.,* 17 U.S.P.Q.2d 1815, 1816 (TTAB 1990) ("geographic limitations will be considered and determined only in the context of a concurrent use proceeding."); *Hollowform, Inc. v. Aeh,* 515 F.2d 1174, 1176 (C.C.P.A.1975) (court agreeing with statement "no authority is found for issuing a restricted registration to an applicant which has established its superior [prior] rights in a mark."). Because we find that the district court issued a concurrent registration, our analysis will center on concurrent use and not cancellation.

In a concurrent registration proceeding we turn to Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d).[12] The statute permits

---

[12]The statute states in pertinent part:

> No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of the nature unless it—

> (d) Consists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office, or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive: Provided, That if the Commissioner determines that confusion, mistake, or deception is not likely to result from the continued use by more than one person of the same or similar marks under

registration of a mark for concurrent use to an applicant (1) who has become entitled to use the mark as a result of his concurrent lawful use of the mark in commerce and (2) where there is no likelihood of confusion for the same or similar marks of two or more parties as a result of the territorial distinctions of the place of use of the goods or services. *BellSouth Corp. v. DataNational Corp.,* 60 F.3d 1565, 1569 (Fed.Cir.1995).

Here, the district court granted concurrent use of the parties' marks based upon the territorial boundaries of actual use and the conclusion that such would eliminate the risk of confusion.[13] We agree with the district court's application of the law and affirm its order granting concurrent use to the parties with the restrictions imposed.

---

> conditions and limitations as to the mode or place of use of the marks or the goods on or in connection with which such marks are used, concurrent registrations may be issued to such persons when they have become entitled to use such marks as a result of their concurrent lawful use in commerce prior.... In issuing concurrent registrations, the Commissioner shall prescribe conditions and limitations as to the mode or place of use of the mark or the goods on or in connection with which such mark is registered to the respective persons.

15 U.S.C. § 1052(d).

[13]We note that there is a circuit split regarding who has the authority to define the territories for concurrent registration, the courts or the Patent and Trademark Office. *Compare Safeway Stores, Inc. v. Safeway Quality Foods, Inc.,* 433 F.2d 99, 103 (7th Cir.1970) ("Commissioner should be the one to determine the place or places of use of the mark by defendants.") *with Old Dutch Foods, Inc. v. Dan Dee Pretzel & Potato Chip Co.,* 477 F.2d 150, 156 (6th Cir.1973) (court may place restrictions). This circuit has not addressed the issue. However, because the parties did not raise the issue before the district court or on appeal, we need not resolve this question. *Narey v. Dean,* 32 F.3d 1521, 1526-27 (11th Cir.1994).

In conclusion, all of the district court's rulings are affirmed, except the portion which granted Defendant attorneys' fees under Georgia law.  We vacate this ruling and remand the issue to the district court for consideration *de novo.*

AFFIRMED IN PART;  REVERSED IN PART;  REMANDED WITH INSTRUCTIONS.