**DUNCAN MCINTOSH COMPANY INC., etc., Plaintiff,**

v.

**NEWPORT DUNES MARINA LLC, etc., et al., Defendants.**

**No. SACV04–312AHSMCX.**

United States District Court, C.D. California, Southern Division.

April 6, 2004.

Stephen E. Blaine, Konrad L. Trope, Daniel J. Callahan, Stephen Z. Vegh, Sally L. Gersten, Callahan & Blaine, Santa Ana, CA, for Duncan McIntosh Co., Inc.

Paul J Marron, Walter Roberts, IV, Susan E. Rusnak, Marron and Associates, Long Beach, CA, for Southern Cal. Marine Ass'n, Inc.

Elizabeth Kimberly Penfil, Call Jensen and Ferrell, Newport Beach, CA, for Dunes Resort, LLC.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

STOTLER, District Judge.

### I.

#### *PROCEDURAL BACKGROUND*

On March 22, 2004, plaintiff filed an *ex parte* application for a temporary restraining order and an order to show cause re: preliminary injunction. On March 23, 2004, the Newport Dunes Marina LLC, Dunes Resort LLC and Newport Dunes Resort and Marina (collectively "Dunes defendants") filed opposition thereto. On March 24, 2004, the Southern California Marina Association ("SCMA") also filed opposition. On March 24, 2004, the Court issued an Order to defendants to show cause why a preliminary injunction should not issue. On March 25, 2004, plaintiff filed a reply brief.

On March 29, 2004, the Court heard oral arguments from counsel for the three parties, indicated that certain preliminary injunctive relief would be granted, and ordered the hearing continued for the purpose of learning whether the parties were able to agree on suitable names for the SCMA boat show or whether Court intervention on the issue would be required. On March 30, 2004, the Court held a further hearing. On March 30, 2004, the Court issued a preliminary injunction in plaintiff's favor.

Having considered the parties' papers, declarations, documents, and other evidence filed by the parties in support of and in opposition thereto, having heard argument of counsel, the Court now issues the following Findings of Fact and Conclusions of Law.

### II.

#### *FINDINGS OF FACT*

1. This is a civil action brought under the trademark laws of the United States, and in particular the Lanham Act. 15 U.S.C. § 1125. The court has jurisdiction over the subject matter of this civil action under 28 U.S.C. § 1331. The preliminary injunction proceeding involves plaintiff's claim that defendants have infringed plaintiff's trademark and service mark rights in the names "Newport Boat Show" and "Newport In The Water Boat Show". Plaintiff is Duncan McIntosh Company Inc. ("McIntosh").

2. McIntosh is a California corporation having its principal place of business in

Irvine, California. It has been engaged in the business of producing boat shows in Newport Beach, California, for the past thirty (30) years. SCMA is a mutual benefit, non-profit corporation organized and existing under the laws of the State of California, located in Orange, California. It is in the business of promoting and serving the boating industry in Southern California. The Dunes operates as a combination of two California limited liability corporations and a California partnership with its principal place of business in Newport Beach, California. It is in the business of operating a marina and resort in Newport Beach, California.

3. For the past 30 years, in the spring, McIntosh has produced an event named the "Newport Boat Show" and commonly referred to in the press and publicity materials as the "Newport Boat Show," "Newport Harbor In the Water Boat Show" and "Newport In–The–Water Boat Show" (collectively, the "marks"). McIntosh has always been the sole and exclusive owner of the marks.

4. The marks have been registered as trade names with the County Clerk of Orange County. These registrations have included the "Newport Boat Show," "Newport Harbor In The Water Boat Show" and "Newport In The Water Boat Show." McIntosh's event ("Newport Boat Show") is the oldest and largest "in the water" boat show on the West Coast featuring yachts that are typically displayed to prospective buyers "in the water" because said vessels are physically too large to be easily trailered by automobiles and transported along commercial or residential streets.

5. The Newport Boat Show has become a spring tradition in Newport Beach, drawing in excess of 10,000 visitors per year.

6. The total revenue for the show between 1993 and 2003 exceeded $5 million.

The advertising and promotional expenses invested over the last 11 years have exceeded $1.4 million. News stories have run, and plaintiff has purchased advertisements, in various publications such as the Los Angeles Times, the Orange County Register, as well as magazines catering to the boating industry.

7. From 1993 to 2003, the Newport Boat Show has been held at the Newport Dunes Resort and Marina in Newport Beach. McIntosh and the Dunes have executed three agreements for that period, with plaintiff renting the Dunes facility for his spring show yearly. Since 1973, McIntosh has expended significant time, money and effort to establish public recognition among individuals who come to the Newport Boat Show. McIntosh has made continuous and exclusive use of the marks in its advertising and promotion of its services in connection with the Newport Boat Show since at least 1993. As a result of these efforts, plaintiff has established substantial recognition of its marks.

8. On or about September 22, 2003, Duncan McIntosh, President of McIntosh, Inc., received a phone call from Mr. Theodorou of the Dunes, advising Mr. McIntosh that the Dunes had reached an agreement with the SCMA to produce a boat show.

9. On September 24, 2003, the SCMA issued a press release entitled: "Newport Dunes Selects SCMA to Produce 2004 Newport Boat Show," in which the Dunes defendants announced that SCMA would be "the presenting organizer of the Annual 2004 Newport Boat Show, April 28—May 2" and "we'll do everything in our power to maintain the high standards of excellence set by the Newport Boat Show of the past...." Plaintiff did not give permission or approval for the Dunes defendants or SCMA to use its marks.

10. Defendant SCMA issued a letter to all its members on October 6, 2003, repeat-

ing that it had been selected by the Dunes Defendants to produce the 2004 Newport Beach Boat Show at the Dunes. However, the Dunes Defendants had always previously acknowledged in contracts between the parties that plaintiff owned all trademarks, including "Newport Boat Show," associated with the event.

11. Since September 26, 2003, defendants have called their event the "Newport Beach Boat Show at the Dunes." Later, defendants added the suffix "produced by the Southern California Marine Association" to the name of the event.

12. Since November of 2003, numerous SCMA advertisements have appeared in print and on the Internet infringing plaintiff's service marks. In addition, there have been numerous instances of actual confusion shown by Internet postings by confused exhibitors claiming to be appearing at the SCMA event but listing McIntosh's marks and the dates of McIntosh's Newport Boat Show. Various exhibitors who are appearing at the SCMA event, but not the Newport Boat Show, have, out of confusion, referred to defendants' event as the "Newport In The Water Show," one of the service marks belonging to McIntosh.

13. Plaintiff's marks are not registered with the United States Patent and Trademark Office (USPTO). However, the Lanham Act provides that unregistered trademarks may be provided coverage against trademark infringement under 15 U.S.C. § 1125(a).

14. The service marks are not generic simply because a city name or geographic location is part of the mark, as shown by the numerous federally registered geographically descriptive service and trademarks for events with city names or geographic locations.

15. Although geographically descriptive, plaintiff's marks are entitled to protection upon a showing of secondary meaning. Plaintiff's consistent and exclusive use of the marks for at least 11 years, in addition to extensive advertising within the high-end boating market, provide sufficient evidence of acquired secondary meaning.

16. Plaintiff conducted a professional survey of boat owners and boat show exhibitors in support of its *ex parte* application. Defendants submitted a declaration by Stanford University economics professor Itamar Simonson attacking the validity of the survey. The survey was not accorded significant weight by the Court.

17. Defendants assert that plaintiff's show is "upscale," whereas their event is targeted towards families, and plaintiff does not disagree.

18. For the purposes of § 43(a) of the Lanham Act, the trademarks at issue are: "Newport Boat Show" and "Newport In The Water Boat Show" as well as other names which contain the words "Newport Beach" and "boat show" that are likely to cause confusion as to the source of the event.

19. There is a probability that the plaintiff will succeed at trial on the merits of its Lanham Act § 43(a) claims,

20. The relevant buying public, boat show attendees and exhibitors, is likely to be confused as to the source and/or sponsorship of defendants' boat show if held under the name "Newport Beach Boat Show at the Dunes."

21. Unless restrained, defendants' activities will irreparably injure and damage the plaintiff. For example, defendants' activities will likely have an adverse effect on the business reputation and goodwill of plaintiff and its ability to produce and control its boat show.

22. Having established a *prima facie* case of trademark infringement, a plaintiff is presumed to suffer irreparable harm when their rights to the exclusive

use of their trademarked services are invaded, as shown here.

23. The balance of hardships tips in favor of plaintiff and the public, and against defendants, in connection with plaintiff's request for the issuance of a preliminary injunction at least with respect to the similarity of names and as issued. However, an injunction to halt and cancel defendants' boat show would create an undue hardship on defendants.

24. Defendants were on notice of plaintiff's service mark and trademark rights and plaintiff's intention to enforce those rights.

25. Plaintiff did not conduct itself in a way to mislead defendants.

26. Plaintiff acted to enforce its rights in a timely fashion.

27. Defendants have had adequate notice and opportunity to be heard on these issues.

28. Plaintiff has submitted sufficient proof to the Court's satisfaction and in compliance with Fed.R.Civ.P. 65 to justify issuance of a preliminary injunction.

29. Plaintiff has satisfied the security requirements of Fed.R.Civ.P. 65(c).

30. Any Finding of Fact herein which may be deemed a Conclusion of Law is hereby adopted as a Conclusion of Law.

### III.

### *CONCLUSIONS OF LAW*

31. A preliminary injunction is an appropriate remedy in a case of infringement of a service mark or trademark when a plaintiff demonstrates either: (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in Plaintiff's favor. *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1204–1205 (9th Cir.2000); *Ro-deo Collection Ltd. v. West Seventh*, 812 F.2d 1215, 1217 (9th Cir.1987).

32. Trade names often function as service marks. Therefore, the same standards apply for injunctive relief and protection of trade names where such names function as source designators. *Accuride Int'l, Inc. v. Accuride Corp.*, 871 F.2d 1531, 1534–1535 (9th Cir.1989). If service marks are not registered under 15 U.S.C. § 1052, then infringement is determined under 15 U.S.C. § 1125(a).

33. The same principles of protection under 15 U.S.C, § 1125(a) also apply to plaintiff's trade dress claims. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767–774, 112 S.Ct. 2753, 2756–2760, 120 L.Ed.2d 615, 623–627 (1992).

34. In a trademark infringement claim, a plaintiff is ordinarily entitled to a preliminary injunction when it establishes a likelihood of confusion. *Vision Sports v. Melville Corp.*, 888 F.2d 609, 612 (9th Cir. 1989). In the instance where plaintiff has not established a likelihood of confusion between two marks if the Court finds there are serious questions on the merits it will then turn to whether the balance of hardships tips sharply in favor of the plaintiff or defendant. *GoTo.com*, 202 F.3d at 1209, "A serious question [is] one as to which the moving party has a fair chance of success on the merits." *Sierra On–Line. Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir.1984). These standards "are not separate tests but the outer reaches of a single continuum." *Int'l Jensen, Inc. v. Metrosound U.S.A.*, 4 F.3d 819, 822 (9th Cir.1993).

### A. *Secondary Meaning*

35. Claims for trademark infringement require findings that the unregistered marks owned by plaintiff are either inherently distinctive or have ac-

quired a secondary meaning and are likely to be confused with defendants' marks by members of the relevant public. *Int'l Jensen,* 4 F.3d at 823; *Vision Sports,* 888 F.2d at 613; *California Cooler, Inc. v. Loretto Winery, Ltd.,* 774 F.2d 1451, 1455 (9th Cir.1985). A mark describing a good or service by reference to its geographic location may nonetheless acquire secondary meaning. *Id.* at 1455.

36. Plaintiff's unregistered marks, which are geographically descriptive, have become distinctive in light of the showing of secondary meaning in the minds of the relevant public. J. McCarthy on Trademarks and Unfair Competition (hereinafter McCarthy) § 14:9; *California Cooler,* 774 F.2d at 1455.

37. A geographical mark should not be dissected into its parts to determine whether it is generic. It is the likely reaction of customers or actual consumer perceptions to the total mark that determines whether a mark is generic or merely geographically descriptive and thus capable of protection. *California Cooler,* 774 F.2d at 1455.

38. Secondary meaning is the mental association by a relevant segment of consumers and potential consumers between the alleged mark and the source of the product. *Levi Strauss & Co. v. Blue Bell, Inc.,* 778 F.2d 1352, 1358 (9th Cir. 1985). The factors considered in determining whether a descriptive mark has achieved secondary meaning include: (1) whether actual purchasers of the product bearing the claimed trademark associate the trademark with the producer as evidenced by survey or direct consumer testimony; (2) the degree and manner of advertising under the claimed trademark; (3) the length and manner of use of the claimed trademark; and (4) whether use of the claimed trademark has been exclusive. *Id.* Additional factors may include the volume of sales and number of customers of products or services utilizing the subject mark or trade name. *Id.*

39. Although all of these factors could be relevant in any given case to prove secondary meaning, survey evidence will often provide the most persuasive evidence of consumer recognition and association. *Grupo Gigante S.A. de C.V. v. Dallo & Co., Inc.,* 119 F.Supp.2d 1083, 1092 (C.D.Cal. 2000). The Court did not accord significant weight to plaintiff's survey evidence.

40. Based on the declarations of Duncan McIntosh and various third-party exhibitors, evidence of long and exclusive use, and significant advertising expenditures, plaintiff has established a likelihood of success in establishing secondary meaning. *Levi Strauss,* 778 F.2d at 1359.

41. Plaintiff's service marks "Newport Boat Show" and "Newport in the Water Boat Show" and any combination thereof involving the concept of the Newport Boat Show are protectable marks pursuant to 25 U.S.C. § 1125(a). These marks have acquired secondary meaning in the minds of the relevant public who associate the Newport Boat Show with plaintiff or a single anonymous source and are therefore distinctive.

42. The location of the show at the Dunes Marina and the time of year in which it is traditionally held are not protectable features of trade dress. *Home Builders Assoc. v. L & L Exhibition Mgmt.,* 226 F.3d 944, 948 (8th Cir.2000). The trade dress claimed thus far in this case is not entitled to protection under the Lanham Act even though "an adroit imitator may of course use similarity of time and location to increase public confusion as to the source." *Id.* Other features of plaintiff's boat show such as the "in the water exhibition" of "big boats" are functional and thus do not act as trade dress. Construing these aspects of plaintiff's

show as trade dress as presently depicted would put "competitors at a significant non-reputation related disadvantage." *Id.* Plaintiff in fact concedes that the boats must be displayed "in the water" due to their size.

### B. *Likelihood of Confusion*

■ 43. In determining whether there is a likelihood of confusion, the Ninth Circuit employs an eight factor test. The factors are as follows: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendants' intent in selecting the mark; and (8) likelihood of expansion of the product lines. *AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348–49 (9th Cir.1979).

■ 44. Actual confusion is not necessary to a finding of likelihood of confusion. *American Int'l Group, Inc. v. American Int'l Bank,* 926 F.2d 829, 832 (9th Cir. 1991). However, any such evidence is "substantial evidence" that confusion is likely. *Levi Strauss,* 778 F.2d at 1360.

■ 45. Plaintiff has demonstrated a similarity between its own mark and that employed by defendants. "Newport Boat Show" and "Newport In The–Water Boat Show" are extremely similar in sight, sound and meaning to defendants' "Newport Beach Boat Show at the Dunes."

46. Plaintiff's declarations and the advertisements submitted by all parties indicate that the services provided by the parties are nearly identical, and the events are marketed through similar trade journals, newspapers, periodicals and Internet web sites.

47. Plaintiff has introduced sufficient evidence in the form of declarations and advertisements to demonstrate that its marks evoke strong association amongst the relevant public. Though geographical-ly descriptive, a showing of secondary meaning establishes mark strength comparable to those that are inherently distinctive. McCarthy § 14:9.

48. Plaintiff has demonstrated the intent of defendants to use a similar mark in support of a finding of likelihood of confusion. When an alleged infringer knowingly adopts a mark similar to another's, there is a presumption that the defendant can achieve his purpose of deceiving the public. *Sleekcraft,* 599 F.2d at 354.

49. Plaintiff has introduced evidence in the form of declarations to support a finding of actual confusion. Very little proof of actual confusion is necessary to prove likelihood of confusion as such evidence is accorded "substantial weight." *McGraw–Edison Co. v. Walt Disney Prod.,* 787 F.2d 1163, 1172–1173 (7th Cir.1986).

50. The likelihood of expansion is irrelevant because the marks at issue are specifically associated with boat shows held in and around Newport Beach, California. *Sleekcraft,* 599 F.2d at 349.

51. The evidence before the Court indicates that the limited size of the yacht or "big boat" market and the affluence of the parties' customers indicates that the relevant public is likely to exercise great care before purchasing each parties' respective services. *Id.*

52. Plaintiff has set forth credible evidence establishing a likelihood of confusion between its marks and the "Newport Beach Boat Show at the Dunes."

53. The balance of hardships and equities tips in favor of plaintiff and the public, and against defendants, in connection with plaintiff's request for a preliminary injunction relating to plaintiff's claims for service mark infringement.

## C. *Irreparable Harm*

54. Plaintiff has demonstrated the possibility of irreparable harm. This harm includes, but is not limited to, a reduction in "sign-ups" from exhibitors less than 50% of what it had been the previous year, incalculable adverse effects on plaintiff's marketing strategy, business relationships and goodwill, and relations with the public. Such support is also found in the 18 declarations by exhibitors and others involved in the industry who detailed their confusion between plaintiff's marks and defendants' similar marks in contracts and promotional materials.

## IV.

### *CONCLUSION*

55. Plaintiff has complied with Rule 65 of the Federal Rules of Civil Procedure in moving for this preliminary injunction, the issuance of which has been conditioned upon the posting of a $15,000 bond by the plaintiff.

56. To the extent that any of the Conclusions of Law set forth above are deemed to be Findings of Fact, they are incorporated in the Findings of Fact as though set forth in full therein.

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order on counsel for all parties in this action.